[Civ. No. 2128.  Fourth Appellate District.—February 24, 1938.]

R. A. EDWARDS et al., Respondents, v. U. F. LEWIS, as Executor, etc., Appellant.

Wilson & Coughlin for Appellant.

Clay & Handy for Respondents.

MARKS, J.—Plaintiffs brought this action for declaratory relief and to recover damages against Nancy McMahon Cheney, G. O. Trauzettel and Georgia A. Trauzettel. Mrs. Cheney answered and filed a cross-complaint to quiet her title to certain lands and water rights and for other relief. Judgment went in favor of plaintiffs for declaratory relief and against them on their cause of action for damages. Mrs. Cheney died. U. F. Lewis was appointed executor of her estate and was substituted in this action. He appeals from the judgment. Mr. and Mrs. Trauzettel have not appealed.

Mrs. Cheney was, during her lifetime, the owner of a considerable tract of land in Riverside County, which had appurtenant to it twenty-four hours full flow, every ten days, of the waters of the San Timoteo Creek.

By an executory sales contract bearing date of March 4, 1926, she agreed to sell this property to G. O. Trauzettel. The sales contract contained certain exceptions and reservations not important here and was so drawn that Trauzettel could subdivide and sell the property.

Under date of March 4, 1926, G. O. Trauzettel and Georgia A. Trauzettel, his wife, entered into an executory sales contract for the sale of about ten acres of this property to plaintiffs. This contract contained the following:

"The parties of the first part (Mr. and Mrs. Trauzettel) agree to pipe and deliver water for the irrigation of said land at the southeast corner thereof to the amount of 50 miner's inches measured under a four inch pressure, for two days in each calendar month, to-wit, on the first and fifteenth days.

"When a mutual water company shall have been organized for the delivery of water to said premises, the parties of the *first* part agree to accept stock in such water company representing said water right, provided that said water and the whole thereof shall be used upon said lands and not elsewhere."

Under date of April 3, 1926, Mrs. Cheney and Mr. and Mrs. Trauzettel joined in a deed conveying the real property to plaintiffs, Mr. and Mrs. Edwards. Besides the land the deed granted "water as per contract dated Jan. 4, 1926, entered into between G. O. Trauzettel and Georgia A. Trauzettel, and grantees herein and the provision therein for ownership of said water in a mutual water company to be hereafter organized".

By a mortgage dated April 28, 1926, Mr. and Mrs. Edwards mortgaged the property to Mrs. Cheney to secure the payments of promissory notes in the sum of $4,300. This amount was credited on the unpaid purchase price of the G. O. Trauzettel contract.

Under date of March 1, 1928, Mrs. Cheney conveyed the property described in her contract of March 4, 1926 (excepting the property deeded to plaintiffs), to G. O. Trauzettel and Georgia A. Trauzettel. This deed contained the following:

"There is conveyed by this Deed also the 24th hours of the full flow of the San Timoteo Creek every ten days recurring, which water is appurtenant to said lands hereby conveyed, together with all other water, water rights, pipes, flumes and ditches thereunto belonging or in any wise appertaining."

Under date of March 1, 1928, G. O. Trauzettel and Georgia A. Trauzettel executed a deed of trust on the property to secure the payment of a promissory note in the principal sum of $35,000. This deed of trust was foreclosed. The property, including the water right, was reconveyed to Mrs. Cheney by deed bearing date of March 27, 1934.

The controversy between the parties to this action arose over the question of the delivery of water under the deed from Mrs. Cheney and Mr. and Mrs. Trauzettel to plaintiffs, and the quantity to be delivered. Appellant contends that Mrs. Cheney signed this deed merely for the purpose of conveying title to the land to plaintiffs; that by the deed Mrs. Cheney did not convey any water rights; that the agreement was simply that of Mr. and Mrs. Trauzettel to deliver water as provided in their contract with plaintiffs bearing date March 4, 1926; that Mrs. Cheney was not bound by this agreement; that the contract referred to in the deed which was dated January 4, 1926, did not exist, and was never executed; that

the only contract between Mr. and Mrs. Trauzettel and plaintiffs was dated March 4, 1926; that this contract was not incorporated in the deed by reference because the deed referred to a contract dated January 4, 1926.

The trial court found as follows:

"I

"That it is true that on or about the 3rd day of April, 1926, the plaintiffs did purchase of the defendants a certain ten acres of land situate in the County of Riverside, State of California, and plaintiffs did at said time purchase of the defendants, the 24 hour flow of fifty miner's inches of water to be delivered by the defendants on the 1st and 15th day of each and every calendar month from and after the said 3rd day of April, 1926.

"II

"That it is true that the purchase noted in Finding I of the said land and water is evidenced by written document in the form of a grant deed which provides, covenants and contracts that the defendants, jointly and severally, will deliver the said water at the time and in the quantity in Finding I found, and deliver the same to the land described in Finding I in and through a pipe line. . . .

"VII

"That it is true that the cross-complainant Cheney is the owner of all the real property consisting of land described in the first cause of her cross-complaint;

"That the cross-defendants Edwards have no right, title or interest in the said land and do claim no right, title or interest in or to the said land.

"VIII

"It is true that the plaintiffs claim and assert a right in the water described in the first count of the defendant Cheney's cross-complaint; that the said claim is not without right."

The judgment contains the following:

"It Is Ordered, Adjudged and Decreed . . . that Nancy McMahon Cheney, G. O. Trauzettel and Georgia A. Trauzettel, defendants herein, are jointly and severally bound to deliver to the southeast corner of the property described in said instrument, respectively, on the 1st and 15th day of each and every calender month, water for irrigation purposes in a full flow of fifty (50) miner's inches for twenty-four (24) hours;

"That along and over the course of delivery, and extending to the southeast corner of the said property, the said water shall flow in a pipe line at such places as the water would be contaminated for irrigation purposes if allowed to flow in an open conduit;

"That the said Cheney and the said Trauzettels are jointly and severally bound to deliver the said water in a pipe line as herein just declared;

"That upon the formation of a mutual water company which may deliver water to the said property, and upon its accepting and being bound by all of the obligations herein declared to be imposed upon the said Cheney and the said Trauzettels, the said parties shall be released from their herein noted obligation. . . .

"It is Further Ordered, Adjudged and Decreed that plaintiffs herein, R. A. Edwards and Evelyn P. Edwards, have no right, title or interest in and to the property described in the cross-complaint of the defendant Nancy McMahon Cheney except such interest as the said Edwards may have by reason of the defendants Cheney and Trauzettel's obligation herein declared to furnish water to the plaintiffs."

The first problem presented is the legal obligation created by the signature of Mrs. Cheney on the deed conveying the ten acres to plaintiffs and referring to the provisions of the contract of sale which provisions were concerned with delivery of water to the land.

█ It is well established in California that where a deed refers to another instrument with a reference sufficiently certain to identify it, the other writing is regarded as incorporated in the deed as a part of it. (*Cadwalader* v. *Nash*, 73 Cal. 43 [14 Pac. 385]; *Danielson* v. *Sykes*, 157 Cal. 686 [109 Pac. 87, 28 L. R. A. (N. S.) 1024]; *Anderson* v. *Trotter*, 213 Cal. 414 [2 Pac. (2d) 373].) █ It follows that if the deed signed by Mrs. Cheney sufficiently identified the conditional sales contract by reference to it, the provisions of the latter instrument regarding water were incorporated in the deed by reference as fully as though they had been copied into the deed. It follows, assuming a proper reference, that by signing the deed Mrs. Cheney became a primary party to the promise to furnish plaintiffs with the specified amount of water.

We must next consider the sufficiency of the reference in the deed to the conditional sales contract. The conditional

sales contract was dated March 4, 1926. The deed referred to a contract dated January 4, 1926. It must be conceded that if the word "January", used in the deed, had been the word "March", which appeared in the contract, the reference would have been sufficient.

The evidence discloses that the conditional sales contract was prepared on January 4, 1926, and was given to R. A. Edwards on that day; that he left California and was gone for about two months; that on his return the word "January" was changed to "March" and the contract executed; that there was no other contract executed and the contract in question was the one under which plaintiffs gained possession of and purchased the ten acres.

It is fundamental that an interest in real property can only be conveyed by an instrument in writing; that where an ambiguity in a deed does not exist, parol evidence is not admissible to supplement the description. It is also true that where an ambiguity exists in a deed, parol evidence may be admitted to explain the ambiguity. (*G. R. Holcomb Estate Co.* v. *Burke,* 4 Cal. (2d) 289, 48 Pac. (2d) 669].)

While, on the face of the conditional sales contract, there appeared the date, "March 4, 1926", on its back appeared the words, "Agreement. G. O. Trauzettel and Georgia A. Trauzettel with R. A. Edwards and Evelyn P. Edwards. Dated January 4, 1926." The conditional sales contract had two dates upon it, one of which was correctly referred to in the deed signed by Mrs. Cheney. It is our conclusion that this presented a sufficient ambiguity to permit the introduction of parol evidence to explain it. That being the case, and the parol evidence showing beyond question that the conditional sales contract from which we have quoted was the only such contract in existence and was the one to which the parties intended to refer in the deed signed by Mrs. Cheney, it follows that the terms of that contract concerning the water were incorporated in the deed and that Mrs. Cheney was bound by them.

The next question is the nature of the covenant to furnish water to plaintiffs' land. Counsel for the executor stoutly maintains that it is not a conveyance of water carrying with it an easement but at best a personal covenant to deliver water.

The contract of Mrs. Cheney is so factually similar to that involved in the case of *Henrici* v. *South Feather Land etc.*

*Co.*, 177 Cal. 442 [170 Pac. 1135], that we consider that case controlling here. The contract in the Henrici case contained the following:

"Addenda. The South Feather Water and Union Mining Company hereby agrees to furnish water for irrigation on the lands described in the within agreement at the rate of Ten Cents per inch per day of Twenty Four hours each, whenever water is flowing in its ditch adjacent to said lands, and said John Alfred Henrici or his assigns hereby agree to pay for all water so furnished by said company for said purposes, said sum of Ten Cents per inch per day of Twenty Four hours monthly on demand.

"Witness the hands and seals of said parties this ninth day of October, A. D. 1884."

In the above case the water company agreed to furnish water to the Henrici property from a ditch. In the instant case Mrs. Cheney agreed to furnish the property of plaintiffs with water through a pipe. The difference between the two contracts is in detail only and not in substantial substance. In the Henrici case it was held that the contract created a continuing obligation to furnish water and a specific right or interest in the portion of the distributing system mentioned. This is the precise situation created here and binds Mrs. Cheney and the portion of her property specifically described. (See *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 [93 Pac. 858, 15 L. R. A. (N. S.) 359] ; *Copeland* v. *Fairview Land & Water Co.,* 165 Cal. 148 [131 Pac. 119].) This conclusion is properly reflected in the judgment of the trial court.

The executor urges that the judgment must be reversed because the trial judge failed to quiet title to Mrs. Cheney's property in accordance with the prayer of her cross-complaint. It is true that there is no formal judgment quieting her title. It may be admitted that there should have been such a judgment. However, it was adjudged that plaintiffs had no interest in the Cheney property except that created by the obligation to furnish water to the Edwards property. Plaintiffs can assert no interest in any of the Cheney property except under the contract to furnish water. This has the effect of quieting her title against plaintiffs except as to the water to which they were entitled. It follows that Mrs. Cheney suffered no prejudice in the trial court's failure to formally quiet her title against plaintiffs.

The evidence shows that the water for the Edwards property was stored in a reservoir on the Cheney property; that it was conveyed in an open ditch to within one hundred fifty feet of the southeast corner of the Edwards property and from that point in a pipe to that corner. This method of conveying the water was adopted shortly after Mr. and Mrs. Edwards went into possession of their property and was followed for about nine years, until 1935, without objection.

While the contract obligates Mrs. Cheney "to pipe and deliver the water for the irrigation" of the Edwards land, it does not in so many words require that the pipe extend from the reservoir to the southeast corner of the Edwards property. A pipe line one hundred fifty feet long was installed and proved satisfactory for about nine years. For this length of time the parties to the contract put their practical construction upon it. As the contract concerning the length of the pipe is uncertain in its terms the parties to that contract should be held to their own practical construction of it. (*Skousen* v. *Herz*, 135 Cal. App. 116 [26 Pac. (2d) 498].)

Certainly there is nothing in the contract justifying the conclusion that Mrs. Cheney could be required to place sections of pipe at intervals along the ditch. Either it required pipe the entire way or only for the one hundred fifty feet which was constructed. As the parties by their own conduct have put the latter construction on the contract the following portion of the judgment should be stricken therefrom:

"That along and over the course of delivery, and extending to the southeast corner of the said property, the said water shall flow in a pipe line at such places as the water would be contaminated for irrigation purposes if allowed to flow in an open conduit."

This provision of the judgment is uncertain. The evidence shows that during several months in 1935, prior to the filing of the complaint on July 30th of that year, noxious weeds had been permitted to grow along certain portions of the banks of the ditch. It is evident that the trial court intended to require the construction of a pipe line along the portion of the ditch where the water would become contaminated by seeds from these weeds. Careful weed cutting in proper season would remove all danger of this contamination. The provisions of the quoted paragraph are prospective. They are too indefinite to be intelligently construed or properly enforced.

It is ordered that the judgment be modified by striking therefrom the paragraph just quoted and as so modified is affirmed. Each party will pay his own costs of appeal.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1938.