[Civ. No. 42. Fifth Dist. Mar. 16, 1962.]

GRACE McWHORTER WINDIATE, Plaintiff and Respondent, v. BENJAMIN STANLEY MOORE, as Executor, etc., et al., Defendants and Appellants.

Robert Stevenson for Defendants and Appellants.

Doddridge & Bonnar and Joseph T. Bonnar for Plaintiff and Respondent.

BROWN, J.—This is an appeal from a judgment quieting title in favor of the plaintiff and against the defendants as to certain real estate and a note and deed of trust, and against the defendants on their cross-complaint of adverse possession.

The defendants in this matter, except for the executor, are legatees and devisees under the will of the decedent, Burt Wallis Windiate (except for defendant and respondent Thomas James Windiate, son of decedent, who, by the pretrial order, advised all counsel that he would support plaintiff's

position, and his interests have become adverse to those of the other defendants). Said Thomas James Windiate has made no appearance in this appeal.

On December 26, 1941, plaintiff was married to Burt Wallis Windiate, who died on December 2, 1958, at the age of 82 years. The duration of the marriage was approximately 16 years, and at the time of decedent's death, the parties were separated.

Before this marriage decedent was the owner of approximately 40 acres of land upon which he lived, and on December 23, 1940, decedent executed a gift deed granting this property to plaintiff. The deed was prepared, typed and drawn by the decedent's attorney, N. F. Bradley, as scrivener. Mr. Bradley had theretofore represented Mr. Windiate as his attorney in a previous divorce action. After the deed was executed, it was placed in an envelope upon which the following instructions appeared:

"Messrs. Bradley & Bradley, Visalia, California

"In the event of my death, you are instructed to deliver the deed contained in this envelope to Grace M. McWhorter.

"DATED December 23, 1940.

[Signed] Burt Wallis Windiate"

The envelope, containing the deed, remained in the possession of Mr. Bradley until after the death of the deceased and until August 10, 1959, when it was delivered by Mr. Bradley to attorney Doddridge, plaintiff's attorney, for her. Plaintiff knew nothing of the deed or the circumstances of execution and deposit thereof up to that time.

On December 17, 1952, the deceased sold 34 acres of the parcel involved to Jess Wells and wife, signing his name, only, to the joint tenancy deed, and received back a note and deed of trust for $15,350. At the time of death of the deceased, the balance due on said note was $7,675.

After the gift deed was prepared, Mr. Bradley had no further dealings with Mr. Windiate, as attorney or otherwise.

In its findings, the court said: "That the Court further finds that it is true that on or about the 23rd day of December, 1940, the decedent, BURT WALLIS WINDIATE, made, executed and delivered to N. FORSYTH BRADLEY, an attorney at law, as a depository, his irrevocable deed conveying to GRACE McWHORTER, the plaintiff herein, the following described real property, to-wit:

"Lots 7, 8, 9 and 10 in Block B of Aileen Orange Colony as per map recorded in Book 7 at page 20 of Maps in the office of the County Recorder of Tulare County, State of California.

"That it is further true and the Court finds that the said deed, dated December 23, 1940 from BURT W. WINDIATE conveying said lands hereinabove described in this Paragraph IV of these Findings of Fact, to GRACE M. McWHORTER was irrevocable in its nature and that the said depository, N. FORSYTH BRADLEY, attorney at law, was on December 23, 1940 instructed in writing by BURT WALLIS WINDIATE, to deliver said deed to GRACE M. McWHORTER, now GRACE M. WINDIATE, in the event of the death of BURT WALLIS WINDIATE."

### Delivery of the Deed

The question presented to this court is whether or not there was an effective delivery of the 1940 deed to the decedent's attorney, Mr. Bradley, and if so, the operation of the deed upon the decedent's property at the date of his death.

Mr. Bradley, as the decedent's attorney, testified that the instructions as set forth hereinabove were the only instructions he received in regard to the disposition of the property, and he had no other recollections.

In the case of *Bury* v. *Young*, 98 Cal. 446 [33 P. 338, 35 Am. St.Rep. 186], the court held that such a delivery upon death without any reservation by the grantor is good, and that evidence of subsequent acts, such as making another deed and a trust deed, by the grantor is to be rejected.

In *Osborn* v. *Osborn*, 42 Cal.2d 358, 363, 364 [267 P.2d 333], the court stated that delivery is a question of intent, but——
"When, as here, however, the grantor's 'only instructions are in writing, the effect of the transaction depends upon the true construction of the writing. It is in other words a pure question of law whether there was an absolute delivery or not.' (*Moore* v. *Trott*, 156 Cal. 353, 357 [104 P. 578, 134 Am.St.Rep. 131].)"

This is also borne out in the case of *Borgonovo* v. *Henderson*, 182 Cal.App.2d 220 [6 Cal.Rptr. 236], where the court cites the *Osborn* case and also states at page 230: "Since the interpretation of the escrow instructions, as any other written document, 'depends solely upon the language of the instrument itself the trial court's construction is not binding and a reviewing court will determine its meaning as a matter of law.' (*Stevenson* v. *County of San Diego*, 26 Cal.2d 842, 844 [161 P.2d 553].)"

It was stated in *Van Core* v. *Bodner,* 77 Cal.App.2d 842, 849 [176 P.2d 784] : ''There is a rule of law that the question as to the intention of a grantor in delivering a deed to a third party is one of fact, unless the instructions are entirely in writing, when it becomes one of law; but when the written instruments do not purport to be all of the directions given, or the same are equivocal, i.e., having two or more significations, ambiguous, uncertain, or doubtful, or which admit of more than one interpretation, evidence of the circumstances attending the preparation of the deed and the acts and statements of the alleged grantor material to the question of delivery, during the entire period of escrow, is admissible. (*Manwell* v. *Board of Home Missions,* 122 Cal.App. 599 [10 P.2d 787] ; 5 Cal.Jur. 10-Yr. Supp. (1944 Rev.) p. 171, § 78.)''

These cases can be distinguished from *Moore* v. *Trott,* 156 Cal. 353 [104 P. 578, 134 Am.St.Rep. 131], because in the *Moore* case there was not an irrevocable delivery because the written instructions provided that the grantor wished his deeds delivered in case he didn't return from the hospital to which he was going for an operation.

In *Kelly* v. *Bank of America,* 112 Cal.App.2d 388 [246 P.2d 92, 34 A.L.R.2d 578], there were no written instructions but the court held that the question of delivery of the deed is one of fact to be determined by the surrounding circumstances of the transaction, and that the absence of intent could be established by the showing of other facts in the case. Here, the grantor made a condition, by stating to grantee, ''. . . do not record the deed until after my death.'' This shows he did not then intend to pass title.

The court, in the present case, rightly refused, in the light of the above cases, to admit the exhibits which were exhibits A, B, C, D, E, F and G, for identification, offered by the defendant, which included divorce decrees prior to plaintiff's marriage to defendant and subsequent wills in the handwriting of the decedent.

In *Bury* v. *Young, supra,* 98 Cal. 446, there were similar offers, and the court said at page 452: ''His declarations and acts made and done in his own interest months after the deed was delivered are not admissible as indicating his intentions in delivering the deed.''

In *Moore* v. *Trott, supra,* 156 Cal. 353, the court said that the test of an effective delivery is the absolute relinquishment of the right of recall by the grantor in his instruction to the person charged with the duty of making the delivery, and

that the agent is bound to do what his instructions require him to do and when such instructions are in writing, the effect of the transaction depends on the true construction of the writing. Thus, it is a pure question of law whether there was an absolute delivery or not.

The first case of *Moore* v. *Trott, supra,* 156 Cal. 353, was reversed, and at the second trial (162 Cal. 268 [122 P. 462]), additional evidence was offered showing that Mr. Moore made a delivery of the deed after his return from the hospital, and on that basis the court affirmed the delivery saying that delivery is sufficient and complete if, from any and all of the circumstances, the grantor has made known his intention irrevocably to part with his dominion and control over the instrument, to the end that it will presently vest title in another.

■■■ In the instant case, we believe that the proper construction of the instructions shows that it was the intent of the decedent to convey the title and that he parted with all dominion and control over it. (15 Cal.Jur.2d, Deeds, § 106, pp. 509-510.) This is also covered in section 105 of volume 15, California Jurisprudence 2d, at page 508, as follows: "Deposit for Delivery after Grantor's Death.—The deposit of a deed by the grantor with a third person with instructions that it be delivered to the grantee upon the grantor's death and with the intention on the part of the grantor to make an absolute delivery and to place the deed beyond his power thereafter to withdraw or control has the effect of immediately vesting title in the grantee, subject to a life estate in the grantor. The third person is thereby made a trustee of the deed for the grantee, . . . ."

And it is further covered in section 107, volume 15 of California Jurisprudence 2d, at page 510, as follows: "Relation Back of Acceptance.—Acceptance of a deed irrevocably deposited by the grantor with a third person for delivery to the grantee ordinarily is deemed to relate back to the time when such deposit was made, although the grantee may not have been aware of the existence of the deed until after the grantor's death. Whether a deed so deposited is to be delivered to the grantee immediately, or only upon the grantor's death, is immaterial. However, the rule will not be applied where the rights of third persons have intervened."

Some reference has been made as to whether or not assent is necessary by the grantee under such a situation. In section 1059 of the Civil Code, a deed is constructively delivered "Where

it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed." ▇ Therefore, the law presumes that the grantee has accepted the grant or gift even though he has no knowledge of it or there is no express consent to such gift, where such gift would be beneficial to such grantee. (*De Levillain* v. *Evans,* 39 Cal. 120.)

The defendants also make reference to Mr. Bradley's acting only as an agent for the deceased and therefore decedent could have recalled the deed at any time, or on the deceased's death the agency terminated. First, we do not think under these circumstances that the deceased could have recalled the deed; and second, in *Herman* v. *Mortensen,* 72 Cal.App.2d 413, 421 [164 P.2d 551], the court held that when a person's attorney becomes the depository for a deed prepared by the client that the attorney becomes the trustee of the deed for the grantee and that any attorney-client relationship theretofore existing becomes superseded by the trust relationship.

▇ The court properly found that the title to the real property, consisting of the 6 acres, vested in the plaintiff subject to a life estate in the decedent, and that the title to said property vested said plaintiff in fee simple on the decedent's death.

▇ Appellants, in their brief, have attempted to make a distinction between the phrases "in the event of my death" and "upon my death." We believe, however, that since we all are going to die sometime, unless there is some other qualifying restriction, "in the event of my death" is the same as "upon my death."

### Proceeds of Note and Deed of Trust

▇ The court properly found that the plaintiff is the owner of the note and deed of trust executed by Mr. and Mrs. Wells for the original price of $15,350 and that at the date of death of the deceased the sum of $7,675 remained owing and unpaid and that said amount was listed, inventoried and appraised as a part of the inventory of the estate. The inventory and the first and final account of the special administrator were also received as evidence and this would show what amount, if any, had been paid on the note to the date the special administrator was replaced since the date of death. The court also properly found that since the date of death certain payments had been made to the defendant Benjamin Stanley Moore as the executor of the estate (who was subsequently appointed executor), and that said amount would

have to be ascertained inasmuch as said defendant had such proceeds in his possession, not having filed a petition for distribution as yet.

This finding was within the pretrial order, which provided that one of the issues in this case was whether the note and the proceeds thereof belonged to the plaintiff. There was some testimony that the executor had waived some of the payments and this fact can be properly ascertained in the final accounting and we see no harm in the term "to be ascertained," as the defendant Moore has this information and plaintiff is entitled to the funds as of the date of decedent's death.

The defendants' brief admits that the decedent sold a fee title to the 34 acres which was made up of his life estate plus the remainder interest of his wife, but they propose a novel theory that the sales price should be apportioned between the life and remainder interests and as each installment is paid, a portion should be credited to the decedent's estate and to the plaintiff. We cannot agree with this theory. The decedent had a life estate in all of the proceeds of the note up to the date of his death and thereafter the entire balance belongs to the plaintiff and the court so found.

Defendants' theory was not raised in the pleadings or in the pretrial conference or during the trial and may not be urged for the first time on appeal (*Damiani* v. *Albert*, 48 Cal.2d 15 [306 P.2d 780]).

We feel that the court properly quieted title as to the note and trust deed; that the balance owed on the note can be properly ascertained, particularly as defendant Moore would have to file an accounting in the estate of which he is the executor; and that this matter was properly framed in the complaint as well as in the pretrial issues and in the judgment.

### Pretrial Order and Motions

Defendants complain that the pretrial order was made, issued, served and filed on December 2, 1960, in violation of rule 8.7 of the Rules for the Superior Courts, in that the defendants had no opportunity to move to amend, modify or correct the pretrial order. The defendants filed their pretrial statement under rule 8.2, setting forth their ideas as to the issues in this matter, as did the plaintiffs, and defendants' counsel appeared, personally, at the pretrial conference, with the result that the pretrial order (which was inadvertently filed on the same day that it was signed) actually sets forth the issues as covered by the defendants' pretrial statement. The defend-

ants made no request for modification at any time, which would have been proper under rule 8.7, and which they had a right to do even though the clerk had inadvertently filed the pretrial order prior to the regular five-day period allowed after service of a copy on the parties. As stated in *Baird* v. *Hodson,* 161 Cal.App.2d 687, 689 [327 P.2d 215], ". . ., the rules were designed to relieve the members of the legal profession and the members of the judiciary from legal technicalities, trivia, details, unessentials, and to have the case tried at an early date upon the real and substantial issues in the case."

On the first day of the trial the court stated that the pretrial conference order stated the defendants' position and that the pretrial conference order supersedes all prior pleadings. Immediately thereafter, and after much discussion about a statement of position, the attorney for defendants stated, "We are proceeding without objection, gentlemen, on that basis?" and the court and the other attorneys agreed.

The trial of this matter was set for December 21, 1960, commencing at 10 o'clock a. m. On December 16, 1960, defendants served and filed a notice that on December 21, 1960, at 10 o'clock a. m. they would move the court for an order continuing the trial. The motion was heard and denied, and trial ensued. It is not claimed that defendants were entitled to a continuance as a matter of right. On the contrary, they concede that granting or denying a motion for a continuance rests in the discretion of the trial court. They do contend, however, that they were prejudiced in that they did not have sufficient time within which to complete discovery proceedings or properly prepare for trial. The record discloses that the defendants made no effort for any discovery proceedings from the time of filing the complaint on December 9, 1959, to the date of trial, and defendants did not file an answer or cross-complaint in the action until almost 10 months after the action was filed.

We see no prejudice by the court's action in denying defendants' motion to continue the matter. The defendants have shown no abuse of discretion by the court in setting the matter for trial on December 21, 1960; in denying the motion for continuance; or in granting the motion consolidating this matter for trial with another related matter.

The defendants complain that the joint trials of the two matters were unnecessary—one being a quiet title proceeding, and the other, a probate matter. Actually, the two matters

were tried separately, but consecutively. The quiet title action was tried first and the probate action, immediately following. We see no substantial prejudice in any way which could be favorable to the defendants.

### Adverse Possession

Defendants' cross-complaint on adverse possession and the defense of laches are not presented in defendants' brief, nor did they present any testimony on the subjects. The court found that there was no adverse possession involved, or laches, and for those reasons, the matter is not discussed herein.

The judgment is affirmed.

Conley, P. J., concurred.

Stone, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied April 9, 1962, and appellants' petition for a hearing by the Supreme Court was denied May 16, 1962. Peters, J., was of the opinion that the petition should be granted.