[Civ. No. 22682. First Dist., Div. One. Oct. 10, 1966.]

ANNITA MECCHI et al., Plaintiffs, Cross-Defendants and Appellants, v. MARIA PICCHI, Defendant, Cross-Complainant and Respondent.

JULIA FONTANA, as Executrix, etc., Plaintiff and Appellant, v. MARIA PICCHI, Defendant and Respondent.

(Consolidated Cases.)

Daniel N. Loeb, Schofield, Hanson, Bridgett, Marcus & Jenkins for Plaintiffs, Cross-Defendants and Appellants.

Ildo L. Rosellini and Wilkie C. Courter for Defendant, Cross-Complainant and Respondent.

SIMS, J.—In January 1963, following the death of their father, Tomaso Picchi, plaintiffs, Annita Mecchi and Julia Fontana, filed their complaint to quiet title to three parcels of real property and for an accounting against their stepmother, Maria Picchi. She in turn filed an answer and a cross-complaint in which she sought to quiet title in herself. In May, Julia, as executrix of her father's last will, filed an action against the stepmother to recover moneys, allegedly the separate and community property of the deceased Tomaso which were properly a part of his estate, and which were allegedly wrongfully withheld or converted by the stepmother prior to the father's death. After issue was joined in this action, the cases were consolidated for trial and tried before the court.

Separate judgments were entered in each action. The court adjudged that the stepmother was the owner of parcel one, which consisted of two lots improved by a residence and rental units; that the stepmother on the one hand, and the daughters jointly on the other, were each entitled to a one-half interest in parcel two, which consisted of the right to maintain an encroachment of the existing improvements on parcel one on an adjoining lot; that the daughters were the joint owners of parcel three, which consisted of an unimproved lot; that the daughters were not entitled to an accounting from the stepmother; and in the second action that the stepmother have judgment and that the executrix was not entitled to an accounting from the stepmother, nor was the latter required to turn over any moneys or properties to the former.

Plaintiffs-daughters and plaintiff-executrix filed their respective appeals from these judgments and they have been treated as consolidated before this court. The daughters attack so much of the judgment in the quiet title action as awarded

the stepmother parcel one and a one-half interest in parcel two, and in connection with this attack they urge that the lower court erred in excluding from evidence an affidavit executed by the father contemporaneously with the execution and manual delivery of the deeds under which they claim title. No cross-appeal was filed by the stepmother as to any portion of the judgment adverse to her.

 The briefs filed by appellants contain no points or authorities attacking the judgment entered against plaintiff-executrix. (See Cal. Rules of Court, rule 15(a).) The appeal from that judgment is deemed waived and abandoned and the judgment should be summarily affirmed. (*Sutter* v. *Gamel* (1962) 210 Cal.App.2d 529, 531 [26 Cal.Rptr. 880]; *Wilson* v. *Board of Retirement* (1957) 156 Cal.App.2d 195, 212-213 [319 P.2d 426]; and 3 Witkin, Cal. Procedure (1954) Appeal, § 150, p. 2332; and see *id.*, § 164, p. 2354.)[1]

There is little dispute as to the facts in the case. Controversy relates to the proper inferences which may be drawn therefrom and to the appropriate legal principles which should be applied.

Domenica Picchi, the first wife of Tomaso and the mother of plaintiffs, died November 5, 1936. At the time of her death she and her husband apparently held the property referred to as parcel one and the whole of the lot which was subsequently subjected to the interest which is herein referred to as parcel two as their community property, and the property referred to as parcel three as joint tenants. It was stipulated that these properties were the father's separate property at the time he married the stepmother February 10, 1942.[2]

According to the stepmother, at the time of the marriage Tomaso owed $2,000 which was paid off shortly after their marriage. She brought $600 into their joint coffers, and in

[1]The record, which has been examined in connection with the appeal from the judgment in the quiet title action, reflects that the funds, the subject of the executrix's action, were principally those withdrawn from a joint tenancy bank account which had been opened June 5, 1943 by the stepmother and the father and maintained by them until she transferred the balance to her sole account one week before his death May 15, 1962.

[2]Proceedings to probate Domenica's estate were not commenced until August 12, 1960. In these proceedings parcel one was distributed to Tomaso by decree signed and filed April 4, 1961 of which a copy was recorded that day. A decree terminating the joint tenancy in parcel three was signed and filed in the same proceedings on May 15, 1961; and, as hereinafter appears, the other parcel was sold pursuant to order confirming sale of real property dated November 18, 1960 and filed November 29, 1960.

1949 and 1950 with the assistance of her son, the father constructed improvements on the property at a cost of $12,000 paid from money she earned and money Tomaso had. During his life Tomaso collected the income from the rentals on the property and, with the stepmother, paid the taxes and insurance.

By deed dated July 7, 1960 and recorded the following day Tomaso, individually and as sole heir-at-law and surviving joint tenant of his predeceased spouse, and Maria, as his present wife, conveyed the property referred to as parcel one to themselves as joint tenants.

On December 30, 1961 Tomaso individually, and as administrator of the estate of his deceased wife, pursuant to order confirming sale of real property, sold the whole of the parcel from which parcel two herein was ultimately derived for $10,000 payable one-half down and one-half within a year. It was stipulated that the net proceeds after expenses, including the final payment received in November 1961 were deposited in the joint bank account maintained by Tomaso and his second wife.

The order confirming the sale recites: ''A very small portion of aforesaid real property is to be reserved to petitioner wherein his own home, which is adjacent to the property, overlaps aforesaid property, portion is to be exactly ascertained and instructions will be left by [purchaser] and Tomaso . . . with a Title Company as to the reservation.'' On July 26, 1961 a grant deed from the purchaser and his wife to Tomaso describing the portion of the property on which the encroachment existed, which is herein referred to as parcel two, was recorded.

The plaintiff Annita testified that on October 23, 1961, in the office of her present attorney, her father delivered to her a deed to herself and her sister which describes the property referred to as parcels one and two and reserved a life estate to the grantor, and a second deed which describes the property referred to as parcel three. Each deed recites: ''For value received and other considerations more fully set forth in that certain affidavit made by me dated October 23, 1961, prepared by my attorneys, [naming them], and deposited with them on said date for safe-keeping, I, THOMASO [sic] PICCHI grant to ANNITA MECCHI and JULIA FONTANA the real property situated in [there follow descriptions of the respective parcels].''

The witness identified an affidavit as the one referred to in the deeds but its offer in evidence was rejected on defendant's

objection. The witness further testified that in the case of each deed the father requested that it not be recorded until his death because he did not want his wife to know about it, or that it had been made. The deeds reflect that they were recorded on May 15, 1962, the date of the grantor's death, at the request of the attorneys named in the clause quoted above.

By deed dated April 27, 1962 and recorded May 1, 1962 at the request of defendant's present attorney, Tomaso and his second wife again conveyed to themselves as joint tenants the property referred to as parcel one. It was stipulated that this deed and the earlier 1960 deed were each gift deeds and that defendant gave no consideration for either.

The findings of the court follow the conclusionary nature of the ultimate facts of ownership alleged in the pleadings and throw little light on the theory upon which the judgment was predicated. Plaintiffs' request for specific findings in regard to the validity of the delivery of and consideration for the deed dated October 23, 1961, which covered parcels one and two, was disregarded by the trial court.

*The court erred in excluding the affidavit of the grantor*

The affidavit recites: "I am this day making deeds and transfers of my property to my daughters, ANNITA MECCHI and JULIA FONTANA, reserving unto myself a life estate. . . ." The grantor then set forth his motive and the alleged facts upon which it was predicated,[3] and concluded: "To correct the wrong that I have done and to protect my said daughters that they may receive what is rightfully theirs, I am making the aforesaid deeds and transfers and also a will leaving the residue of my estate to them.

"I declare that I am doing this freely of my own will, without the influence or coercion of anyone, and for the reasons set forth hereinabove.

"October 23, 1961.

Tomaso Picchi/s/''

[3]The recitals read: "I am doing this to clear my conscience, and to right a wrong which I have committed. My first wife, DOMENICA PICCHI, died leaving a will which left all properties to me for my life and then to my two daughters above named, upon my death. I destroyed that will and testified in the Superior Court of San Mateo County in the Estate of DOMENICA PICCHI, action number 29050, that I could not find a will and did not know of the existence of a will for DOMENICA PICCHI. This was untrue and I knew it to be untrue when I so testified, but I was not well at the time and my present wife, MARIA PICCHI, made me do it.''

■ In the first place, the affidavit should have been admitted because of the reference to it in the deeds under which plaintiffs' claim "It is well established in California that where a deed refers to another instrument with a reference sufficiently certain to identify it, the other writing is regarded as incorporated in the deed as a part of it [Citations.]" (*Edwards* v. *Lewis* (1938) 25 Cal.App.2d 168, 172 [76 P.2d 720].)

■ Secondly, under the provisions of the Code of Civil Procedure a declaration which forms part of the transaction, which is itself the fact in dispute, or is evidence of that fact, is provable as part of the transaction. (Code Civ. Proc., §§ 1850 and 1870, subd. 7; see Evid. Code, § 1241 and comment.) Under these sections the verbal or written acts of the grantor directly connected with the pending transaction are admissible either to evince that the transfer was absolute (*Horton* v. *Kyburz* (1959) 53 Cal.2d 59, 71 [346 P.2d 399]; *Pitney* v. *Pitney* (1921) 55 Cal.App. 22, 29 [202 P. 24], or to show that the grantee took subject to conditions (*Sethman* v. *Bulkley* (1937) 9 Cal.2d 21, 24 [68 P.2d 961]; *Airola* v. *Gorham* (1942) 56 Cal.App.2d 42, 50-51 [133 P.2d 78]; and see *Williamson* v. *Kinney* (1942) 52 Cal.App.2d 98, 103-104 [125 P.2d 920]).

■ The written declarations were also admissible under the general rule as stated by Traynor, J. (now C.J.) in *Whitlow* v. *Durst* (1942) 20 Cal.2d 523 [127 P.2d 530] and often quoted and applied in cases involving the delivery of deeds. "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Williams* v. *Kidd,* 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703]; *Donahue* v. *Sweeney,* 171 Cal. 388 [153 P. 708]; *De Cou* v. *Howell,* 190 Cal. 741 [214 P. 444]; See, McBaine, *Admissibility in California of Declarations of Physical or Mental Condition,* 19 Cal.L.Rev. 231, 251). Likewise, in gift cases declarations made by the grantor before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving. (*Sprague*

v. *Walton,* 145 Cal. 228 [78 P. 645].)'' (20 Cal.2d at pp. 524-525; *Danenberg* v. *O'Connor* (1961) 195 Cal.App.2d 194, 202 [15 Cal.Rptr. 667]; *Coffey* v. *Cooper* (1960) 185 Cal.App.2d 464, 468 [8 Cal.Rptr. 358]; *Kelly* v. *Bank of America* (1952) 112 Cal.App.2d 388, 394 [246 P.2d 92, 34 A.L.R.2d 578]; *Casey* v. *Casey* (1950) 97 Cal.App.2d 875, 879-882 [218 P.2d 842]; *Dinneen* v. *Younger* (1943) 57 Cal.App.2d 200, 205-207 [134 P.2d 323]; and see *Obranovich* v. *Stiller* (1963) 220 Cal.App.2d 205, 208 [34 Cal.Rptr. 923]; *Brovelli* v. *Brovelli* (1963) 213 Cal.App.2d 16, 18 [28 Cal.Rptr. 422]; *Henneberry* v. *Henneberry* (1958) 164 Cal.App.2d 125, 129 [330 P.2d 250].)

In deference to the trial court it must be noted that some confusion was engendered by the grounds respectively stated in support of and in opposition to the admission of the document in question. At the time the written declarations were offered it appeared that plaintiffs were not only relying upon the deeds from their father, but also on a theory that they were the beneficiaries of a constructive trust of any interest in the property held by the stepmother because of their father's fraud in concealing their mother's will. ▆ Since the statements in the affidavit were clearly hearsay as to the past facts recited therein (see fn. 3), the defendant properly objected to their admission because they did not fall within a recognized exception to the hearsay rule, and because the issue of constructive fraud on those facts was barred by proceedings in Domenica's estate in which the daughters participated. (On the basis of the latter objection the court subsequently excluded evidence about Domenica's will, and the constructive trust theory disappeared from the case.)

▆ Plaintiffs contended that it was admissible as an integral part of the deed, and also because it showed the consideration for making the deed. As noted above, the instrument should have been admitted on the former theory, and, as well, both because it was a verbal act, and because it was a declaration tending to show the intent of the grantor. Nevertheless, the plaintiffs could not establish consideration, from the past unjust enrichment of the father as distributee of an interest in their mother's estate of which he wrongfully deprived them, against his successor to one-half the title—the stepmother—by declarations made after he had parted with that one-half by the first joint tenancy deed.

The problem of evidence admissible for one purpose and inadmissible for another purpose is discussed in *Adkins* v.

*Brett* (1920) 184 Cal. 252, at pages 254-259 [193 P. 251], wherein it is recognized that evidence of declarations which must properly be admitted on the issue of the declarant's mental state may contain recitals of fact which are inadmissible hearsay. The former must be admitted with, if requested, appropriate limiting instructions in a jury trial. (See Witkin, Cal. Evidence (1958) §§ 115 and 709, pp. 138 and 741.) Here the court properly refused to consider the evidence for the truth of the matters recited as to past events, but it erred in refusing to receive the affidavit for the light it could throw on the father's intent to effect a then present transfer of his property.

Defendant asserts there was no prejudice in the exclusion of the affidavit because there was other sufficient evidence to support the implied finding of the court that there was no absolute transfer of the father's remainder interest in parcel one. Plaintiffs, however, were entitled to have all of the evidence bearing on the grantor's intent considered, and the omission to do so could not be other than prejudicial under the facts of this case as the analysis hereinafter set forth demonstrates.

### *The sufficiency of the delivery*<br>*of the deeds*

The existing judgment reflects some inexplicable inconsistencies. Parcel one and parcel two were conveyed by the same instrument. Nevertheless, the judgment indicates that no interest passed to plaintiffs in respect of parcel one, but a one-half interest passed to them in respect of parcel two. The instrument affecting title to parcel three was concededly part and parcel of the same transaction. The court determined that it was effective to transfer title to parcel three.

 The findings shed no light on this problem.[4] The court erred in failing to find on the issue of delivery as requested by plaintiffs.[5] (Code Civ. Proc., § 634; *Garber* v. *City of Los*

[4]For example, the finding in respect of defendant's answer which denied plaintiffs' title reads: ''The denials in paragraph I of defendant's answer, referring to paragraph II of plaintiffs' complaint, are true as concerning PARCEL ONE; as concerning PARCEL TWO, each has an undivided one-half interest; as concerning PARCEL THREE, the denials are not true; . . .'' Plaintiffs objected to this finding on the ground that it was uncertain and ambiguous.

[5]Plaintiffs requested specific findings of fact and conclusions of law on the following issues: ''1. Whether the decedent, TOMASO PICCHI, validly delivered the deed dated October 23, 1961, covering Lots 4 and 5 (Parcel One), and a portion of Lot 9 (Parcel Two), to his daughters, ANNITA MECCHI and JULIA FONTANA, the grantees named therein. 2. Whether the

*Angeles* (1964) 226 Cal.App.2d 349, 354-356 [38 Cal.Rptr. 157] ; and cf. findings in *Kelly* v. *Bank of America, supra,* 112 Cal.App.2d 388, 393; and *Obranovich* v. *Stiller, supra,* 220 Cal.App.2d 205, 209 with those in *Danenberg* v. *O'Connor, supra,* 195 Cal.App.2d 194, 203-204 where no such request was made.)

■ "[T]he opinion of the trial judge may not be used to impeach, modify or add to his findings because the findings supersede such opinion. [Citations.] Such opinion may, however, be considered for the purpose of discovering the process by which he arrived at his conclusion, and as an aid in interpreting his findings where interpretation is necessary. [Citation.]" (*Blackburn* v. *Drake* (1963) 211 Cal.App.2d 806, 819 [27 Cal.Rptr. 651] ; and see *MacMillan Petroleum Corp.* v. *Griffin* (1953) 116 Cal.App.2d 425, 426-427 [255 P.2d 75] ; but cf. *De Cou* v. *Howell* (1923) 190 Cal. 741, 751 [214 P. 444].)

An examination of the memorandum opinion which the judge of the trial court filed in rendering his decision does not dispel the discrepancies.

The trial court declared, as is conceded before this court, that on the eve of the execution of the deeds to the daughters, the stepmother was vested with the interest of a joint tenant in parcel one by virtue of the joint tenancy deed executed and recorded in July 1960; and that the father could only convey a one-half interest in the property. In respect of this parcel the trial court concluded : "The making and recording of the deed of April 27, 1962, negates any concept of valid delivery of the deed of October 23, 1961. At most, the evidence respecting the execution of the deed of October 23, 1961, indicates a conditional delivery which was nullified by the recorded deed of April 27, 1962. Accordingly, it is found that plaintiff have no interest in the lots comprising the parcel, and that cross-complainant has the surviving joint tenancy interest therein."

Despite this conclusion as to the deed, it predicated the stepmother's interest in parcel two, which is the second parcel described in the same deed, on her right to set aside a gift of community property to the extent of one-half thereof. (See *Ballinger* v. *Ballinger* (1937) 9 Cal.2d 330, 334 [70 P.2d 629].) If this parcel were in fact community property of the

decedent, TOMASO PICCHI, executed and delivered the deed of October 23, 1961 to his daughters, ANNITA MECCHI and JULIA FONTANA for consideration."

father and stepmother (cf. discussion, *infra*), and the deed was not validly delivered, the daughters would have had no interest therein at all.

The opinion indicates that the third parcel was the separate property of the father on the eve of the conveyance to the daughters,[6] and concluded: "There were no other transfers respecting this parcel so it is found that lot eight is the property of plaintiffs.

"The claim of . . . Maria Picchi for declaration of a community property interest in the lot was not established by the evidence."

The failure of the latter claim did not of necessity establish the rights of the daughters. If the deed for parcel three was not validly delivered the property would have passed not by the deed but as part of the father's estate. Further speculation on this phase of the case is precluded by the stepmother's failure to appeal from the judgment.[7]

Generally delivery or absence of delivery is a question of fact to be determined by the trial court. (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 684 [37 Cal.Rptr. 46]; *Obranovich* v. *Stiller, supra,* 220 Cal.App.2d 205, 208; *Brovelli* v. *Brovelli, supra,* 213 Cal.App.2d 16, 18; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 811; *Danenberg* v. *O'Connor, supra,* 195 Cal. App.2d 194, 200 and 201-202; *Kelly* v. *Bank of America, supra,* 112 Cal.App.2d 388, 395.) Nevertheless, if the undisputed evidence in this case unerringly points to one of the conclusions on the issue of delivery which has been embraced by the trial court, and is indisputedly insufficient to sustain the opposite conclusion, the issue should be determined as a matter of law.

Defendant contends that the evidence fails to show that the deed was physically handed to the plaintiff Annita, and that it only shows a delivery to Tomaso's attorney. Her affirmative answer to the question "[I] . . . ask you if this deed was delivered to you by your father in my office," cannot be construed, standing alone, as other than embracing the manual transfer of the document. (See *Obranovich* v.

---

[6]The court, in apparent reliance on the testimony of one of the daughters, asserted that the grantor reserved a life estate in this parcel, but in fact the second deed contains no such reservation.

[7]It may be assumed that the stepmother's failure to appeal from the adverse judgment on this phase of the case is predicated upon the premise that if the property, as the separate property of Tomaso, lodged in his estate it would pass to the daughters anyhow under the terms of the will which his affidavit suggests he had executed.

*Stiller, supra,* 220 Cal.App.2d 205, 209.) Defendant's inquiry on cross-examination as to whether the deeds were actually handed to the daughter, was self-defeated by the interjection of a second question before the witness could answer the first. The recitals in the deeds suggest that the affidavit may have been left with the attorneys for safekeeping. Insofar as the deeds are concerned the record only reflects the delivery to Annita and the ultimate recording at the request of the attorneys after the grantor's death. This suggests that the grantor had surrendered all possession and control of the deed, even though it does not indicate whether Annita or the attorneys had possession during his lifetime.

The manual delivery having been established, and there being no evidence to show that the possession of the deeds ever reverted to the grantor, the grantees should be entitled to the inference, albeit no presumption, that delivery in the sense of effecting a legal conveyance was intended. (See *Stewart* v. *Silva* (1923) 192 Cal. 405, 408 [221 P. 191]; *Miller* v. *Jansen* (1943) 21 Cal.2d 473, 477 [132 P.2d 801]; *Estate of Pieper, supra,* 224 Cal.App.2d 670, 685; *Obranovich* v. *Stiller, supra,* 220 Cal.App.2d 205, 208 and 209; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 812-813; *Henneberry* v. *Henneberry, supra,* 164 Cal.App.2d 125, 131; *Ogg* v. *Gunderson* (1946) 74 Cal.App.2d 384, 387 [168 P.2d 793]; *Dinneen* v. *Younger, supra,* 57 Cal.App.2d 200, 204; *Merritt* v. *Rey* (1930) 104 Cal.App. 700, 705 [286 P. 510].)

Defendant attacks the credibility of the plaintiff-witness because of her interest in the outcome of the case, and because the evidence as a whole indicates that she conspired with her father to conceal the existence of her mother's will. The court may reject the testimony of the grantee and the scrivener where there is substantial evidence to contradict it. (*Huth* v. *Katz* (1947) 30 Cal.2d 605, 608-609 [184 P.2d 521]; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 813-814.) Neither party called the attorney who prepared the papers and witnessed the transaction. It is unnecessary to determine which party, if either, should thereby be faced with an unfavorable inference. (Cf. Code Civ. Proc., § 2061, subds. 6 and 7 [Evid. Code, §§ 412 and 413] with BAJI (1964 Supp.) Instructions Nos. 30 and 30-A, and comment thereon.) The trial court apparently found that there was a manual transmittal, first, to the extent necessary to pass title to the second parcel designated in the same deed, and, secondly, in respect of the second deed itself.

Defendant attempts to justify the conflicting conclusions, in respect to the two parcels described in the first deed, on the ground that at the time of the execution of the deeds each was held in a different form and vested different attributes of ownership in him. This was undoubtedly true. The residence property was the subject of a joint tenancy between Tomaso and his second wife, whereas, the right to maintain the encroachment was either his community or separate property. This distinction may have given him a motive to treat his interest in each of the two parcels in a different manner, but can in no sense justify inconsistent interpretations of two portions of what was an indivisible and integrated transaction.

It is concluded that the evidence can only be interpreted as establishing a manual transmittal of the deed, and that plaintiffs are entitled to the inference that an effective delivery was intended by the grantor. Is there evidence to rebut this intention?

Defendant relies upon (1) the grantees' failure to record the deed until after the death of the grantor;[8] (2) the retention of possession by the grantor, and his payment of taxes, insurance and maintenance without any assertion of a claim of ownership by the grantees;[9] and (3) the grantor's exercise of dominion over the property by purporting to convey the property in joint tenancy for a second time.[10]

An examination of the authorities which have considered these factors (fns. 8, 9 and 10, *supra*) indicates that the foregoing facts if established do not compel, as distinguished from support, a finding of nondelivery. It is recognized that it is only the cumulative effect of such circumstances which sustains the conclusion of nondelivery. (*Obranovich* v. *Stiller*,

---

[8]*Estate of Pieper* (1964) 224 Cal.App.2d 670, 685 [37 Cal.Rptr. 46]; *Obranovich* v. *Stiller* (1963) 220 Cal.App.2d 205, 211 [34 Cal.Rptr. 923]; *Blackburn* v. *Drake* (1963) 211 Cal.App.2d 806, 814 [27 Cal.Rptr. 651]; *Kelly* v. *Bank of America* (1952) 112 Cal.App.2d 388, 398 [246 P.2d 92, 34 A.L.R.2d 578].

[9]*Estate of Pieper, supra,* 224 Cal.App.2d 670, 685; *Obranovich* v. *Stiller, supra,* 220 Cal.App.2d 205, 210; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 816-818; *Kelly* v. *Bank of America, supra,* 112 Cal.App. 2d 388, 398; but cf. *Longley* v. *Brooks* (1939) 13 Cal.2d 754, 762 [92 P.2d 394]; *DeCou* v. *Howell* (1923) 190 Cal. 741, 747 [214 P. 444]; *Ogg* v. *Gunderson* (1946) 74 Cal.App.2d 384, 389 [168 P.2d 793]; *Shaver* v. *Canfield* (1937) 21 Cal.App.2d 734, 738 [70 P.2d 507]; *Merritt* v. *Rey* (1930) 104 Cal. 700, 706 [286 P. 510].

[10]*Dinneen* v. *Younger* (1943) 57 Cal.App.2d 200, 208 [134 P.2d 323]; see *Williams* v. *Kidd* (1915) 170 Cal. 631, 646-647 [151 P. 1]; but cf. *DeCou* v. *Howell, supra,* 190 Cal. 741, 746-747; *Merritt* v. *Rey, supra,* 104 Cal.App. 700, 706.

*supra,* 220 Cal.App.2d 205, 212; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 813.)

There is no such cumulative effect in this case. ▆▆▆ The failure to record does not destroy the validity of the conveyance as between the parties (*Merritt* v. *Rey, supra,* 104 Cal. App. 700, 707) ; and where it is explained, as it was herein, it alone has no controlling significance. (*Stewart* v. *Silva* (1923) 192 Cal. 405, 410 [221 P. 191] ; *Belli* v. *Bonavia* (1959) 167 Cal.App.2d 275, 279 and 280 [334 P.2d 196] ; *California Trust Co.* v. *Hughes* (1952) 111 Cal.App.2d 717, 721 [245 P.2d 374] ; and see *Kelly* v. *Bank of America, supra,* 112 Cal.App.2d 388, 397, where there was no explanation as to the intent which motivated the request to refrain from recording.)

▆▆▆ Nor may defendant rely on the fact that the grantor during his lifetime collected the rents and paid the expenses attendant to the ownership of the property. Since he expressly reserved a life estate in the property his acts and conduct in reference to it were perfectly consistent with the interest reserved, and in no way inconsistent with a prior transfer of the remainder interest. (*Stewart* v. *Silva, supra,* 192 Cal. 405, 410; *DeCou* v. *Howell, supra,* 190 Cal. 741, 747; *Herman* v. *Mortensen* (1945) 72 Cal.App.2d 413, 421 [164 P.2d 551] ; *Merritt* v. *Rey, supra,* 104 Cal.App. 700, 706; and see *Osborn* v. *Osborn* (1954) 42 Cal.2d 358, 362-363 [267 P.2d 333].)

There is absent in this case any other evidence to support an inference that the delivery of the deed was testimentary in character or was dependent on the survivorship of the grantees. (Cf. *Estate of Pieper, supra,* 224 Cal.App.2d 670, 686 and 688; *Obranovich* v. *Stiller, supra,* 220 Cal.App.2d 205, 210 and 211; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 811-812 and 814-815; *Danenberg* v. *O'Connor, supra,* 195 Cal.App.2d 194, 201 and 202; *Henneberry* v. *Henneberry, supra,* 164 Cal.App.2d 125, 130-131; *Kelly* v. *Bank of America, supra,* 112 Cal.App.2d 388, 396.) ▆▆▆ In fact, reflection indicates that the reservation of a life estate would be a futile and useless provision if the grantor was to exercise control and dominion over the disposition of the entire fee of the property during his lifetime. It can only indicate the intention to effect a present transfer.

The sole remaining evidence supporting a finding of non-delivery is the fact that the grantor executed, delivered and caused to be recorded a subsequent and second joint tenancy deed of parcel one to defendant. This was the apparent theory of the trial court as set forth in the quotation from its opinion

set forth above. The delivery in October 1961 was either unconditional and effective (Civ. Code, § 1056), or conditional and ineffective for all purposes. (See *California Trust Co.* v. *Hughes, supra,* 111 Cal.App.2d 717, 722.) ▮ In the absence of any evidence of acts, declarations or other conduct inconsistent with the passage of title to the remainder in October 1961, the second deed, being a gift deed unsupported by a valuable consideration, could not defeat the executed unconditional conveyance. (Civ. Code, §§ 1217 and 1214; and see *DeCou* v. *Howell, supra,* 190 Cal. 741, 746-747; *Hodges* v. *Lochhead* (1963) 217 Cal.App.2d 199, 202-203 [31 Cal.Rptr. 879]; *Windiate* v. *Moore* (1962) 201 Cal.App.2d 509, 516 [19 Cal.Rptr. 860]; *Belli* v. *Bonavia, supra,* 167 Cal.App.2d 275, 280, wherein subsequent conveyances were involved.) Since the transaction was in fact executed not even the grantor himself could secure the return of the property. (*Pitney* v. *Pitney, supra,* 55 Cal.App. 22, 29 and cf. *Coffey* v. *Cooper, supra,* 185 Cal.App.2d 464, 468.)

▮ When all of the facts, including the rejected affidavit, are considered the case is governed by the following principles: ''Delivery is a question of intent. In some cases to ascertain the grantor's intent it is necessary to have recourse to his acts and declarations both before and after his transmission of the deed to the grantee or a third party. (*Williams* v. *Kidd,* 170 Cal. 631, 649-652 [151 P. 1, Ann.Cas. 1916E 703]; *Rice* v. *Carey,* 170 Cal. 748, 753-754 [151 P. 135]; *Donahue* v. *Sweeney,* 171 Cal. 388, 391-392 [153 P. 708]; *Northern Calif. Conference Assn.* v. *Smith,* 209 Cal. 26, 33 [285 P. 314]). When, as here, however, the grantor's 'only instructions are in writing, the effect of the transaction depends upon the true construction of the writing. It is in other words a pure question of law whether there was an absolute delivery or not.' (*Moore* v. *Trott,* 156 Cal. 353, 357 [104 P. 578, 134 Am.St.Rep. 131].)'' (*Osborn* v. *Osborn, supra,* 42 Cal.2d 358, 363-364; accord: *Hodges* v. *Lochhead, supra,* 217 Cal.App.2d 199, 201-203; *Windiate* v. *Moore, supra,* 201 Cal.App.2d 509, 512-515; *Borgonovo* v. *Henderson* (1960) 182 Cal.App.2d 220, 230 [6 Cal.Rptr. 236]; *Belli* v. *Bonavia, supra,* 167 Cal.App.2d 275, 279.) The applicability of the latter rule to undisputed circumstances such as exist in this case is recognized in those cases which exemplify the theory of conflicting evidence on which defendant relies. (See *Estate of Pieper, supra,* 224 Cal.App.2d 670, 687; *Obranovich* v. *Stiller, supra,* 220 Cal. App.2d 205, 211; *Blackburn* v. *Drake, supra,* 211 Cal.App.2d 806, 815-816; *Danenberg* v. *O'Connor, supra,* 195 Cal.App.2d

194, 203; *Kelly* v. *Bank of America, supra,* 112 Cal.App.2d 388, 397; *Dinneen* v. *Younger, supra,* 57 Cal.App.2d 200, 207.)

The following is applicable: "The situation presented by this appeal may be summed up as follows: If the trial court disbelieved all the witnesses who testified on behalf of the defendant with reference to the delivery of the deed, there is no evidence to overcome the presumption of delivery derived from the fact that the grantee had possession of the deed. If the trial court believed the testimony of these witnesses, it could not escape a finding of fact that the deed was delivered. In either event the finding of the trial court was erroneous." (*Stewart* v. *Silva, supra,* 192 Cal. 405, 411.)

### Conclusions

▮ The deed to parcels one and two effected a present transfer of the remainder of whatever interest the grantor had in the respective parcels at the time of the conveyance subject only to the reserved life estate. He held an interest as joint tenant as his separate property in parcel one. The deed effected a severance of the joint tenancy. (See *Green* v. *Skinner* (1921) 185 Cal. 435, 438 [197 P. 60].) On the grantor's death the plaintiff-daughters took a half interest in the property as tenants in common with the stepmother-defendant.

▮ Counsel and court apparently overlooked the proviso in the order confirming the sale of the lot from which parcel two was ultimately carved. It is readily apparent that it was the intent of the parties to that purchase and sale to reserve the right to encroach. This being so the subsequent conveyance to Tomaso was neither a gift (Civ. Code, § 163) nor an unexplained conveyance during marriage which would be governed by the presumption that it was community property (Civ. Code, § 164). It was clearly his separate property as a portion reserved from that which concededly constituted such. The deed, therefore, conveyed the full remainder interest to plaintiffs.

▮ It is questionable whether the plaintiff should hold this right in gross. The deed as described is by its terms for the benefit of the improvements on parcel one in which Tomaso as grantee had a one-half undivided interest as joint tenant at the time. It is impossible to sever the right to encroach. Common sense dictates that his acquisition, as would any improvement made by him on the property, inured to the benefit of himself and his joint tenant equally. This being so

the plaintiffs should be deemed to hold parcel two under the gift deed for the common benefit of themselves and their cotenant.

Since plaintiffs are entitled to an accounting for one-half of the net revenues from parcel one since the death of the grantor the case must be remanded for that purpose. The judgment in the quiet title action is reversed with directions to enter revised findings of fact and conclusions of law in accordance with the views set forth herein and to conduct further proceedings for an accounting between the parties. The judgment in the executrix's suit for an accounting is affirmed. Plaintiffs shall recover their costs of appeal.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied October 31, 1966.