EISENMANN *v.* EISENMANN.

(No. CI-75-071—Decided September 29, 1976.)

Court of Common Pleas of Paulding County.

*Childs & Childs Co., L. P. A.,* and *Mr. James W. Childs,* for plaintiff.

*Messrs. Hyman, McMaster, Cook & Webb* and *Mr. Norman E. Cook,* for defendants Hegerfeld, minors.

*Mr. James M. Sponseller,* Guardian ad Litem.

*Messrs. Hunt & Hunt* and *Mr. William T. Hunt,* for defendants Adams.

HITCHCOCK, J.   On August 18, 1975, the court approved the sale of .489 acre tract and the house standing thereon for $6,500 pursuant to authority granted by R. C. 5303.21.   This land was a portion of a 240 acre farm in this county which had been conveyed in trust by William Eisenmann on November 30, 1962, to Gary Eisenmann "as Trustee, his successors and assigns in trust, for and during the natural lifetime of the Grantor herein or until December 1, 1990, whichever later occurs."   See *Henderson* v. *Henderson* (1968), 15 Ohio Misc. 276, 237 N. E. 2d 336.

The first question for decision is whether or not this

deed recorded at Volume 175, Page 378, Record of Deeds, is invalid for any purpose because it does not comply with the rule against perpetuities as the interests created need not necessarily vest within the life of the grantor and 21 years plus a gestation period as to any person then in being. Obviously, at the time the deed was delivered, December 1, 1990, was 28 years and 1 day in the future. So if the grantor had died in any of the first 6 years after the original deed none of the expectant estates could have vested in possession within the period required by the rule. The court must conclude that the deed is invalid for the reason stated. The "whichever is later" phrase could have been properly qualified to have brought the grant within the rule but it was not. Had the words been "whichever first occurs" the validity of the deed could not successfully be challenged.

The rule against perpetuities has been clearly stated: "A limitation that would create a property interest which might continue contingent or executory after the termination of lives in being when the limitation is made and twenty-one years is void.

"The time the limitation is made is, in conveyances *inter vivos*, the execution of the instrument, and in conveyances by will, the death of the testator.

"The validity of the limitation is determined by looking at it from the point of view of the time when it is made. It makes no difference when the question arises." Everett Fraser, *Cases and Readings on Property*, 420, Commerce Clearing House, Inc., Chicago (1932).

This rule in Ohio is recognized by statute. R. C. 2131.-08, (originally G. C. 10512-8) as in effect from January 1, 1932, through October 23, 1967, read:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being *at the creation of the interest.* All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common

law rule against perpetuities." (Emphasis supplied.)

Had the trust attempted been within the rule against perpetuities it created expectant estates in tail with these words "at the death of the grantor or December 1, 1990, whichever later occurs, to Gary Eisenmann, Ronald Eisenmann, and Roger Eisenmann, the heirs of their body and assigns forever, if any, and if none, to the survivor or survivors of them the" described real estate.

The first trustee Gary died July 8, 1965, leaving children issue of his body Crystal Kay, age 4, and Clark Eugene, age 1. On July 16, 1971, in Case Nos. 1689 and 1690 in the Huntington Juvenile Court, Huntington, Indiana, Crystal Kay was adopted by Edwin E. Hegerfeld and Rosemary Hegerfeld (surviving spouse of decedent Gary but not the mother of Crystal Kay); and Clark Eugene, son of decedent Gary and surviving spouse Rosemary was adopted by Edwin E. Hegerfeld, receiving new names Crystal LaRose Hegerfeld and Clark Edwin Hegerfeld.

Consequently, had the deed been valid it created an expectant estate interest in fee in that class of persons who might be heirs of the body of the named grantees and alive when the precedent possessory estate might terminate. As such, said children are properly parties hereto as they were the owners of this expectancy by reason of being members of a class which might either get larger or smaller before the date of vesting in possession would occur. R. C. 2131.04 reads:

"Remainders, whether vested or contingent, executory interests, and *other expectant estates* are descendible, devisable and alienable in the same manner as estates in possession." (Emphasis supplied.)

In other words, Crystal and Clark, were the deed valid, had vested expectancies in the property subject to be divested if they did not live to be or leave surviving natural descendants to be, members of the class taking upon termination of the precedent estates.

The fact that the grantor William continues to live and that 1990 is less than 21 years in the future does not cure the original defect because the limitation as drafted pro-

vided that the day for limitation of the expectant estates might exceed the grantor's life, plus 21 years and 9 months, for a period in excess of 6 years.

As the deed was defective to accomplish its expressed purpose it utterly failed to vest in interest "at the creation of the interest" any estate in Crystal and Clark, even though all expectant interests attempted to be created were subject to be divested by failure to live long enough to continue to be a member of the class entitled to take in possession on the occasion of the limiting event.

Again, in the words of Professor Fraser, *ibid.*, at page 420: "The rule is satisfied by vesting in interest (becoming an estate), it does not require vesting in possession."

Does the 1967 amendment to R. C. 2131.08 provide any authority for validating this 1962 *inter vivos* deed which was invalid at the time of its execution? In pertinent part the section now reads:

"(A) * * * [Omitted-repeated original statute, *supra*, but adds:] except as set forth in paragraphs (B) and (C) of this section.

"(B) For the purposes of this section, the time of the creation of an interest in real or personal property subject to a power reserved by the grantor to revoke or terminate such interest shall be the time at which such received power expires, either by reason of the death of the grantor or by release of the power or otherwise.

"(C) Any interest in real or personal property which would violate the rule against perpetuities, under paragraph (A) hereof, shall be reformed, within the limits of the rule, to approximate most closely the intention of the creator of the interest. In determining whether an interest would violate the rule and in reforming an interest the period of perpetuities *shall be measured by actual rather* than possible events. [Emphasis supplied.]

"(D) Paragraphs (B) and (C) of this section shall be effective with respect to interests in real or personal property created by wills of decedents dying after December 31, 1967, and with respect to interests in real or personal property created by inter vivos instruments executed after De-

cember 31, 1967, and with respect to interests in real or personal property created by inter vivos instruments executed on or before December 31, 1967, *which by reason of paragraph (B) of this section will be treated as interests created after December 31, 1967.* An interest in real or personal property which comes into effect through the exercise of a power of appointment shall be regarded as having been created by the instrument exercising the power rather than the instrument which created the power." (Emphasis supplied.)

The grantor continues to live so that now the expectant estates created in the grantees must vest within the life of William Eisenmann, the grantor, or by December 1, 1990 (a day that is only 14 years, 2 months and 1 day in the future), and well within 21 years. If measured by actual events, the 1962 trust deed is now within the rule.

The 1962 trust deed, however, was an *inter vivos instrument* executed before December 31, 1967, and it is not one affected by paragraph (B) as the grantor therein did not make any of the expectant estates attempted to be created "subject to a power reserved by the grantor." Consequently there is no power which will terminate subsequent to December 31, 1967, by expiration caused by the death of the grantor, release thereof, or otherwise.

Having found the original 1962 deed to be invalid to accomplish its expressed purpose and that the text of 1962 revision of R. C. 2131.08 provides no authority to reform it, the court next considers what the two children would have owned, if anything, had said deed been within the rule.

Crystal was born February 18, 1961, and Clark on July 16, 1964, and both were adopted July 16, 1971. Had the deed been valid, the court would find that up through July 15, 1971, the day before their adoption, each had become "vested in interest" on the day their father died leaving them "heirs of his body," to wit: July 8, 1965. The moment they survived their father they both became members of the class then entitled to share in the expectant estate tail should they live long enough, or leave surviving natural descendants living long enough, to become an owner of the fee simple in pos-

session, on the occasion of the limiting event, as "issue of the first donee in tail." This comment is made in support of the proposition that the said minor children are proper parties herein as being affected by this decision of the court and to reflect this court's opinion of their status should higher courts find some reason for finding the deed valid. See *In re Estate of Freeman* (1965), 195 Kan. 190, 404 P. 2d 222, even though this court is of the opinion that the various alternatives discussed therein are incompatible with Ohio's original statute adopting the rule in unadulterated form. See, further, *Fraser, supra,* and the cases reprinted by him: *Jee* v. *Audley* (1787), Court of Chancery, 1 Cox Eq. Cas. 324, 29 E. R. 1186; *Johnson* v. *Preston* (1907), 226 Ill. 447, 80 N. E. 1001, 10 LRA-ns 564; *In Re Villar* (1929), Court of Appeals, 1 Ch. Div. 243, 98 L. J. Ch. 223.

R. C. 3107.13, entitled "Legal rights after adoption," contains these provisions:

"* * * For all purposes under the laws of this state, including without limitation all laws, wills, and trust instruments governing inheritance of and succession to real or personal property and the taxation of an estate, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

"(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parents.

"(B) In case of adoption by a stepfather or stepmother, the rights and obligations of the natural parent who is the spouse of the adopting stepparent shall not in any way be affected by such adoption.

"Unless an express intention to the contrary appears in a will or trust instrument, 'child,' 'children,' 'issue,' 'grandchild,' or 'grandchildren' includes a legally adopted child, for the purpose of inheritance to, through or from the adopting parents of such child, irrespective of when such will was executed or such trust was created.

"This section does not debar a legally adopted child from inheriting, under a will identifying such child by any name by which he has been or is known or other clear identification, property of such child's natural parent or parents or other natural kin as in case of bequest or devise to any other person.

"For the purpose of inheritance to, through, or from a legally adopted child, such child shall be treated the same as if he were the natural child of his adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession, except where one of the natural parents of such child has died and his living parent remarries and such child is adopted by such stepfather or stepmother, in which case his right of inheritance from or through his natural parent or other natural kin shall not be affected by his adoption."

The court finds of no consequence the fact that paragraph (A) above does not contain these added words, "or be prevented from inheriting or succeeding to property expressly limited to the heirs of the body by the natural kin of such adopted child," because this result is the natural corollary of paragraph (A) as it now stands. Moreover, the property interests of a child received through inheritance prior to adoption and which are vested in interest but not in possession, the court perceives and holds, are not affected by the adoption statute, and constitutionally could not be extinguished without some due process consideration. The court makes these observations convinced that plaintiff's position asserted in the complaint to the effect that these children, by adoption, were cut off from their right as owners of the expectant estates they would otherwise own, had they not been adopted, and assuming that the 1962 trust deed was valid, is wrong.

The court now finds that it erred in granting the prayer of the petition and authorizing the sale requested under authority of R. C. 5303.21, by failing to note that the trust deed executed on November 30, 1962, failed to create any expectant entailed estates because not within the rule against perpetuities. Consequently the sale of the .489

acre tract, as one authorized by R. C. 5303.21, was erroneous (1) for that reason and (2) for lack of necessary parties in the persons of Crystal and Clark Hegerfeld.

The Hegerfelds now complain that plaintiff is not a trustee authorized to bring this action because he is a successor trustee only by virtue of the deed of the administrator with the will annexed of the estate of a first successor trustee (who had received his title in the same manner) in a written trust deed executed on June 30, 1970, repeating the general language of the deed of November 30, 1962. It is not denied that no action was ever taken to provide a successor trustee pursuant to R. C. 2109.26, as effective since October 1, 1953. Nevertheless, plaintiff Roger D. Eisenmann is a *de facto* trustee who has accepted the trust and has acted as such with the consent of the grantor and all adult parties to this action. Moreover, he has always proceeded pursuant to this court's direction or pursuant to the terms of the original grantor's instrument so far as the court is aware, and cannot now be faulted for failing to obey either the grantor or this court.

Moreover, the sale authorized by and approved by the court of the .489 acre tract (with house in sad state of repair) for $6,500 to defendants Joseph R. Adams and Connie M. Adams was made without objection of the grantor William H. Eisenmann whom the court now finds was then the true and only owner in fee. Nor does anyone dispute that the plaintiff trustee, Roger D. Eisenmann, has received the $6,500 less authorized expenses and court costs and holds the same for the benefit of the trust now found to be invalid.

The court recognizes that this ruling may have tax consequences for some parties but such are not properly issues in this action.

Consequently, judgment will be entered finding that all present parties are proper parties, that the instrument in writing executed by William H. Eisenmann on November 30, 1962, purporting to be a trust deed as recorded at Volume 162, Page 449, Record of Deeds, is invalid as creating any interests in the real estate described therein; that the Adams' are the true owners of the .489 acre purchased

by them as per the order of the court herein dated August 18, 1975, and entitled to have the title thereof quieted in them; that Roger M. Eisenmann shall transfer to William H. Eisenmann all money or anything of value he holds as trustee by reason of the 1962 trust deed found to be invalid as the true owner thereof; that William H. Eisenmann shall by quit claim or warranty deed convey all his right, title and interest in mentioned .489 acres to Joseph R. and Connie M. Adams; and that defendant grantor pay the costs.

*Judgment accordingly.*