786 F.2d 910
 5 Fed.R.Serv.3d 701
 In re Ben W. ALLUSTIARTE, and Linda M. Allustiarte, Debtors.
W. Austin COOPER, as Trustee of Ben W. Allustiarte and Linda
M. Allustiarte, Plaintiff-Appellee,
v.
Gregory R. ALLUSTIARTE, Beneficiary, Benjamin A.
Allustiarte, Beneficiary, Marianne Allustiarte
Pack, Beneficiary, et al., Defendants-Appellees.
In re Ben W. ALLUSTIARTE, and Linda M. Allustiarte, Debtors.
W. Austin COOPER, as Trustee of Ben W. Allustiarte and Linda
M. Allustiarte, Plaintiff-Appellant,
v.
Gregory R. ALLUSTIARTE, Beneficiary, Benjamin A.
Allustiarte, Beneficiary, Marianne Allustiarte
Pack, Beneficiary, et al., Defendants-Appellees.
 Nos. 84-1993, 84-2029.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 16, 1986.
Decided April 7, 1986.
 
 A. Edward Briseno, Cooper & Shaffer, Sacramento, Cal., for trustee.
 Gregory Allustiarte, in pro. per.
 Appeal from the United States District Court for the Eastern District of California.
 Before SNEED, ANDERSON, and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge.
 
 
 1
 Gregory Allustiarte, Benjamin Allustiarte, Jr., and Marianne Allustiarte Pack (hereinafter collectively referred to as the Allustiartes) appeal from the district court's affirmance of the bankruptcy court's order denying their claims to certain properties owned by their parents Benjamin Allustiarte, Sr. and Linda Allustiarte (the debtors) and requiring that the Allustiartes pay the money owing to the debtors pursuant to the lease agreements on the Muzzy Ranch. We affirm the district court's determination of each issue raised in the Allustiartes' appeal.
 
 
 2
 The trustee in bankruptcy of the debtors' estate (the trustee) cross-appeals from the vacation by the district court of the bankruptcy court's order which imposed a constructive trust on the Storm property and the Shipp property for failure to join the spouses of Benjamin Allustiarte, Jr. and Marianne Allustiarte Pack. Because we conclude that the interests of the absent spouses were adequately protected, we reverse the district court's order regarding the imposition of a constructive trust.
 
 I. PERTINENT FACTS AND PROCEDURAL HISTORY
 
 3
 Benjamin, Sr. and Linda Allustiarte and their children Benjamin, Jr., Gregory, and Marianne, are in the business of grazing and selling livestock. In 1961, the parents set up separate trusts for each of their children and designated Linda Allustiarte as trustee. Following the establishment of these family trusts, the debtors engaged in a series of transactions which are the subject of this appeal.
 
 
 4
 In 1963, the debtors and the Rudnicks purchased as tenants in common 4500 acres of pasture land known as the Muzzy Ranch. In 1967, the debtors, conveyed three parcels of the Muzzy Ranch to the family trusts.
 
 
 5
 In 1966, the debtors executed a promissory note in the amount of $450,000, secured by a deed of trust against the Muzzy Ranch. In 1968, the debtors executed a second promissory note in the amount of $250,000. These notes were made payable to the family trusts.
 
 
 6
 In 1965, Linda Allustiarte, allegedly acting as trustee of the family trusts, leased property known as the Storm property with an option to purchase. In 1973, the Allustiartes exercised the option.
 
 
 7
 In 1974 and 1975, pursuant to separate written agreements, the debtors leased portions of the Muzzy Ranch to their children Benjamin, Jr. and Gregory, who had formed a partnership.
 
 
 8
 In 1966, Linda Allustiarte, allegedly acting as trustee of the family trusts, leased property known as the Shipp property with an option to buy. In 1976, the Shipp property was foreclosed, and Gregory purchased it and conveyed a 2/3 interest to his brother and sister.
 
 
 9
 In 1974, the debtors filed for bankruptcy under Chapter XII of the Bankruptcy Act. In 1975, the Chapter XII proceedings were dismissed. However, due to the debtors' appeal, the Order of Dismissal was not final until 1979. In 1979, the debtors filed the current Chapter XII proceeding, and a trustee in bankruptcy was appointed.
 
 
 10
 In 1980, the trustee brought the current action against the debtors in the bankruptcy court. First, he sought a judicial declaration that the conveyances by the debtors of portions of the Muzzy Ranch to the family trusts were of no force or effect, and that title was properly held by the debtors. Second, he sought to impose a constructive trust for the benefit of the debtors' creditors on both the Shipp and Storm properties held by the Allustiartes. Third, the trustee sought a judicial determination that the two promissory notes from the debtors to the family trusts were not enforceable. Fourth, the trustee contended that three leases giving Gregory and Benjamin, Jr., in partnership, use of parts of the Muzzy Ranch, were void. In addition, the trustee asserted that rents, issues and profits were still owing from the partnership's use of the Muzzy Ranch.
 
 
 11
 The bankruptcy court found for the trustee on the first three claims. On the fourth claim, the bankruptcy court found that the leases were negotiated without proper authority, but made no finding regarding their validity. Instead, the bankruptcy court found that the Allustiartes had used the Muzzy Ranch and had made insufficient rent payments to the debtors as required by the lease agreements. Benjamin Allustiarte, Jr. and Gregory Allustiarte were found liable to the debtors' estate for unpaid rent in the amount of $374,487.
 
 
 12
 The Allustiartes appealed this decision to the district court. The district court affirmed each of the bankruptcy court's findings except those pertaining to the Shipp property. It found that title to the Muzzy Ranch was held by the debtors. It found that the constructive trust imposed on the Storm property for the benefit of the debtors' creditors was proper. It found that promissory notes from the debtors to the family trusts were unenforceable and the trust deed against the Muzzy Ranch securing those notes was void. In addition, it found that the unpaid rent of $374,487 from the lease of the Muzzy Ranch was owed to the debtors by the brothers who leased the property.
 
 
 13
 The district court reversed the order of the bankruptcy court regarding the Shipp property. The district court found that the failure to join the spouses of the Allustiartes was reversible error. It therefore vacated that portion of the judgment, and remanded for retrial.
 
 II. DISCUSSION
 A. MUZZY RANCH
 
 14
 The Allustiartes contend that the bankruptcy court erred in quieting title to the Muzzy Ranch on the following grounds: (1) the action was barred by the statute of limitations, (2) the action should have been barred due to failure to join an indispensable party, and (3) the findings are not supported by sufficient evidence.
 
 1. Statute of Limitations
 
 15
 The Allustiartes assert that the trustee's action to quiet title to the Muzzy Ranch was barred by the statute of limitations. The applicable statute of limitations does not bar an action by a grantor in possession of the property. Muktarian v. Barmby, 63 Cal.2d 558, 560, 47 Cal.Rptr. 483, 407 P.2d 659 (1965). The uncontradicted evidence shows that the debtors remained in possession, and thus the trustee, standing in the shoes of the debtors, was not barred by the statute.
 
 
 16
 2. Failure to Join the Trustee of the Family Trusts
 
 
 17
 During the bankruptcy trial, Linda Allustiarte appeared as trustee of the family trusts. The Allustiartes argued before the district court for the first time that Linda Allustiarte did not have the capacity to appear as trustee for the family trusts because she had filed for bankruptcy. They asserted that her appearance before the bankruptcy court as trustee was ineffective to protect the interests of the family trusts. They seek to invalidate the order of the bankruptcy court quieting title to portions of the Muzzy Ranch in the debtors on the ground that the trustee in bankruptcy failed to join a person who could lawfully act as trustee of the family trusts.
 
 
 18
 The district court held that Linda Allustiarte could not serve as trustee at the trial because, under Cal.Civ.Code Sec. 2281 (West 1985), persons filing for bankruptcy are barred from serving as trustees. The court also concluded, however, that the Allustiartes were barred from asserting this claim due to (1) equitable estoppel, (2) the fact that Linda Allustiarte was the de facto (if not de jure ) trustee, and (3) waiver.
 
 
 19
 We agree with the district court's holding that because the Allustiartes remained silent on this issue before the bankruptcy court, the doctrine of equitable estoppel prevents them from now asserting that defense. The doctrine of equitable estoppel precludes a person with a duty to speak from taking advantage of another by remaining silent. Jablon v. United States, 657 F.2d 1064, 1068 (9th Cir.1981). The Allustiartes' failure to inform the court that their trustee was disqualified from representing their interests estops them from asserting that defense now.
 
 
 20
 The district court was also correct in holding that, even if Linda Allustiarte could not serve as trustee de jure, she was a trustee de facto. A person who voluntarily acts as if he or she is a trustee is a de facto trustee. Eisenmann v. Eisenmann, 52 Ohio Misc. 119, 370 N.E.2d 788, 793 (1976); accord In re Dakin's Will, 58 Misc.2d 736, 296 N.Y.S.2d 742, 743 (1968). The acts of a de facto trustee are valid as against third parties. Dakin, 296 N.Y.S.2d at 743.
 
 
 21
 It is also clear from the record that the Allustiartes waived their right to assert this defense. Under Fed.R.Civ.P. 9(a), a party must make a "specific negative averment" in order to assert a defect in capacity. Failure to do so in a timely manner is a waiver of that defense. Summers v. Interstate Tractor & Equipment Co., 466 F.2d 42, 49-50 (9th Cir.1972). The Allustiartes made no such averment before trial. They waived their right to this defense.
 
 3. Sufficiency of the Evidence
 
 22
 In the bankruptcy court, the trustee argued that the Muzzy Ranch was never legally transferred to the family trusts because (1) the Rudnicks, who were tenants in common in the Muzzy Ranch, had not signed the conveyance, and (2) debtors lacked the requisite intent to effect a transfer of title. The district court held that the debtors could convey their portion of the Ranch without the Rudnicks' concurrence, but that delivery of the deed was ineffective, rendering the conveyance void.
 
 
 23
 The fact that the Rudnicks did not sign the conveyance would not, standing alone, preclude the debtors from transferring title to their interest in the Muzzy Ranch. A person may freely alienate or encumber his interest in property held in co-tenancy. Schoenfeld v. Norberg, 11 Cal.App.3d 755, 765, 90 Cal.Rptr. 47 (1970).
 
 
 24
 In California, a transfer of land is only effective if there has been delivery of title. In order to have effective delivery, the grantor must intend to convey title to the land in question. Meyer v. Wall, 270 Cal.App.2d 24, 27, 75 Cal.Rptr. 236 (1969); accord Mecchi v. Picchi, 245 Cal.App.2d 470, 486, 54 Cal.Rptr. 1 (1966).
 
 
 25
 The evidence presented at trial amply supports the trustee's contention that the debtors did not have the requisite intent to convey their interest in the Muzzy Ranch. The evidence shows that they continued to exercise dominion and control over the property after the alleged conveyance. The debtors used crops growing on the land as collateral for loans, and also leased portions of the property. In addition, it was revealed at trial that the transfer to the family trusts made the Muzzy Ranch eligible to participate in a special federal irrigation project for which it would otherwise have been ineligible. This evidence supports an inference that the motive for the transfer of title was not to convey an interest in the land but to obtain federal benefits.
 
 
 26
 The finding of lack of intent was not clearly erroneous. The lack of intent resulted in ineffective delivery. The purported transfer was void. The order quieting title in favor of the trustee on behalf of the debtors' estate was proper.
 
 B. STORM PROPERTY
 
 27
 The Allustiartes contend that the bankruptcy court erred in imposing a constructive trust on the Storm property. They argue, first, that the action was barred by the statute of limitations. Second, they assert that the action should have been barred for failure to join an indispensable party. Third, they claim that the findings are not supported by sufficient evidence.
 
 1. Statute of Limitations
 
 28
 The Storm property was leased with an option to buy by Linda Allustiarte ostensibly acting on behalf of the family trusts. All the lease payments were made by the debtors. The Allustiartes subsequently exercised the option to buy. The trustee asserted at trial that these actions constituted fraud.
 
 
 29
 Both parties agree that the relevant statute of limitations is Cal.Civ.Proc.Code Sec. 338(4) (West 1986), which establishes a three year period for bringing an action based on fraud. The statute of limitations begins to run upon discovery of the fraud. Id. A conveyance is fraudulent if the grantor is insolvent, and receives no consideration. Cal.Civ.Code Sec. 3439.04 (Deering 1984). This fraud could not have been discovered by creditors at the time of recordation of the sale, since the names of the debtors did not appear on the deed. The fraud was not discovered until the trustee in bankruptcy took over the accounts and records of the debtors. The action was filed within three years of the date the fraud was discovered.
 
 2. Failure to Join an Indispensable Party
 
 30
 The Allustiartes contend that their spouses should have been joined as indispensable parties regarding the Storm property claim. The deed was conveyed to:
 
 
 31
 Gregory Allustiarte, a married man, dealing with his sole and separate property ... Benjamin A. Allustiarte, a single man; and Marianne Allustiarte, a single woman....
 
 
 32
 The land is located in California. Thus, California law controls. Oregon ex rel. State Land Board v. Corvalis Sand & Gravel Co., 429 U.S. 363, 378-79, 97 S.Ct. 582, 590-91, 50 L.Ed.2d 550 (1977). In California, property acquired before marriage is separate property. Cal.Civ.Code Secs. 5106 & 5107 (West 1983). Benjamin, Jr. and Marianne were not married at the time of the alleged conveyance. The evidence is uncontradicted that any interest in the Storm property held by Benjamin Allustiarte, Jr. and his sister Marianne was their separate property. Thus, there was no duty to join their spouses concerning the Storm property claim.
 
 
 33
 Gregory Allustiarte was married at the time of the alleged conveyance of the Storm property. While there is a rebuttable presumption that property acquired during marriage is community property, In re Marriage of Mix, 14 Cal.3d 604, 611, 122 Cal.Rptr. 79, 536 P.2d 479 (1975); accord See v. See, 64 Cal.2d 778, 783, 51 Cal.Rptr. 888, 415 P.2d 776 (1966); In re Marriage of Aufmuth, 89 Cal.App.3d 446, 455, 152 Cal.Rptr. 668 (1979), there is a stronger rebuttable presumption that the terms of a conveyance accurately state the ownership interests. In re Marriage of Lucas, 27 Cal.3d 808, 814-15, 166 Cal.Rptr. 853, 614 P.2d 285 (1980). Since the conveyance specifically gives title to Gregory as separate property, and no evidence has been offered to rebut this presumption, Gregory's wife does not have an interest in the Storm property. Therefore, she was not an indispensable party regarding the Storm property claim.
 
 3. Sufficiency of the Evidence
 
 34
 The bankruptcy court found that it was proper to impose a constructive trust on the Storm property because the debtors' children acquired the property as part of a scheme to defraud the debtors' creditors. There is ample evidence in the record to support this finding.
 
 
 35
 Prior to the conveyance, the debtors had negotiated to lease the property in their own names. After the conveyance, the property was managed by one of the debtors. Further, the debtors made all the lease payments to Storm prior to the exercise of the option to buy. The Allustiartes' accountant testified that his records indicated that, "[a]lthough the note was executed by Gregory, Benjamin and Marianne, it is considered to be the liability of Ben and Linda Allustiarte who are making the payments of interest and principal." The bankruptcy court's findings that the debtors attempted to use the family trusts as a veil to conceal their interest in the Storm property were not clearly erroneous.
 
 C. PROMISSORY NOTES
 
 36
 The trustee in bankruptcy asked the bankruptcy court to declare that the promissory notes executed by the debtors, and secured by their interest in the Muzzy Ranch, were not enforceable because they were not supported by any consideration to make loans. The trustee argued that the family trusts had insufficient funds totalling $700,000. He also claimed that the Allustiartes could not demonstrate that they performed work equivalent to that amount. The bankruptcy court found that no consideration had been furnished in exchange for the promissory notes.
 
 
 37
 Under California law, proof of the execution of a promissory note raises a rebuttable presumption that the note is supported by consideration. Cal.Civ.Code Sec. 1614 (West 1982). The burden of showing lack of consideration lies with the challenging party. Cal.Civ.Code Sec. 1615 (West 1982). At trial, the trustee presented substantial evidence that there were no documents supporting the claim that the trusts had loaned money to the debtors. In addition, testimony at trial established that the assets of the family trusts never approached the amount of the alleged loans. Although the rendering of services can provide adequate consideration for a promissory note, Cal.Civ.Code Sec. 1614 (West 1982), the only evidence in the record that work was in fact performed in exchange for the promissory notes was presented through the testimony of Benjamin Allustiarte, Sr. The trier of fact disbelieved him. The records presented at trial indicated that Benjamin Allustiarte, Sr. was manager of the Muzzy Ranch, and that the services performed by him and his children were indistinguishable. Furthermore, the record shows that the work performed on the Muzzy Ranch was done either by him, or under his direction. The trial court's finding that the promissory notes were unsupported by consideration is not clearly erroneous. The promissory notes are unenforceable.
 
 
 38
 D. LEASE PAYMENTS OWED TO THE DEBTORS' ESTATE
 
 
 39
 The debtors made three separate leases for portions of the Muzzy Ranch with a partnership formed by their children Benjamin, Jr. and Gregory. In October, 1974, they entered into a three year lease. Payment was fixed at $70,500 per year. In November, 1975, the partnership entered into a second lease of 310 acres for five years at $50 per acre. In August, 1975, the parties enacted a third lease for five years calling for the payment each quarter of $19,000. As of November, 1980, there was a balance owing for the three leases of $374,487.
 
 
 40
 Benjamin, Jr. and Gregory do not allege that this amount was paid to the debtors. They attempted to prove at trial that there was an oral modification to the leases which permitted them to offset their cash payments owed with improvements to the property. Gregory and Benjamin Allustiarte, Sr. testified at trial that the leases had been so modified orally. The trial court did not find their testimony credible. The Allustiartes' accountant testified that he told Gregory Allustiarte in 1977 that the rental payments on the Muzzy Ranch were too low, and a gift tax might be imposed. Gregory informed the witness that there were offsetting charges for labor and use of equipment which accounted for the difference. The accountant told Gregory that the lease and any offsetting arrangements needed to be in writing. Gregory agreed, but never sent the witness any papers evincing a modification. It is clear from this testimony that Gregory Allustiarte had been on notice since 1977 that the claim of an oral modification to the leases was of questionable credibility. The bankruptcy court found that there was no oral modification of the written leases, and that the partnership was delinquent in its payment of rent in the amount of $374,487.
 
 
 41
 Under our division of judicial labor, it is the trier of fact's duty to evaluate the credibility of witnesses. We must accord great deference to the trial court's determination regarding whether a witness speaks the truth. Fed.R.Civ.P. 52; see Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (holding that "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings."); see also Nicacio v. I.N.S., 768 F.2d 1133, 1139 (9th Cir.1985) (holding that "the district court has great discretion in deciding whether to credit a witness' testimony."). The only evidence of an oral modification presented at trial was the testimony of Gregory, one of the partners who owed the unpaid amount under the written agreements, and Benjamin Allustiarte, Sr., his father who is one of the debtors. The trial court properly exercised its discretion in finding their testimony not credible. The trial court's finding that the amount of $347,487 is now owing to the debtors is not clearly erroneous.
 
 E. SHIPP PROPERTY
 
 42
 Before the district court, the Allustiartes raised the same issues regarding the Shipp property that they advanced concerning the Storm property. They contended that the imposition of a constructive trust on the Shipp property was error because (1) the allegation of a fraudulent conveyance was barred by the statute of limitations, (2) the trustee in bankruptcy failed to join indispensable parties to the action, and (3) the bankruptcy court's findings were unsupported by the evidence. The district court affirmed the bankruptcy court's findings as to fraud, but reversed the decision for failure to join indispensable parties. Having prevailed on the issue of failure to join, the Allustiartes now challenge the finding of fraud based on the statute of limitations and assert that the evidence was insufficient. In his cross-appeal, the trustee contends that the district court erred in holding that a reversal of the order imposing a constructive trust was compelled because of the failure to join indispensable parties.
 
 1. Statute of Limitations
 
 43
 The Shipp property was conveyed in a manner similar to the transactions involving the Storm property. The debtors negotiated for themselves with Shipp prior to the execution of the lease. The lease was executed by Linda Allustiarte, purportedly as the trustee of the family trusts. During the term of the lease, Benjamin Allustiarte, Sr. managed the property. The rent payments were made by the debtors.
 
 
 44
 As discussed above concerning the Storm property, the statute of limitations does not begin to run on a claim based on fraud until it is discovered. Because title was not taken in the debtors' names, the fraudulent conveyance was not discovered until the trustee in bankruptcy was appointed and took possession of the debtors' records. This action was filed within three years of the appointment of a trustee. Thus, under Cal.Civ.Proc.Code Sec. 338(4) (West 1986) the statute of limitations had not run when the action was brought.
 
 2. Sufficiency of the Evidence
 
 45
 The evidence that Benjamin Allustiarte, Sr. managed the Shipp property as if it were his own, and that the debtors paid the rent on the lease supports the finding that title to the land was taken in the name of the Allustiarte children to defraud creditors. The finding of the bankruptcy court that the conveyance of title to the Shipp property was fraudulent is not clearly erroneous.
 
 
 46
 3. The Absent Spouses Were Not Indispensable Parties
 
 
 47
 The trustee in bankruptcy contends that Marianne Allustiarte Pack's husband and Gregory Allustiarte's wife were not indispensable parties regarding the Shipp property claim. He argues that the district court erred in vacating the bankruptcy court's order imposing a constructive trust on the Shipp property for failure to join the absent spouses. We agree.
 
 
 48
 The Shipp property was conveyed to Gregory, who was married at the time of the conveyance. It is undisputed that this conveyance was to the community, thus making Gregory's wife a holder of title. They conveyed 1/3 interest each to Benjamin Allustiarte, Jr. and his wife, and to Marianne and her husband. When Benjamin Allustiarte, Jr. and his wife divorced, she reconveyed her share to him, and was not a holder of title when this action commenced. The Allustiartes failed to object prior to trial to the fact that Gregory's wife and Marianne's husband were not joined as parties. During trial, however, the Allustiartes made a motion to dismiss due to failure to join an indispensable party. The motion was denied.
 
 
 49
 The procedure which must be followed in determining whether a person is an indispensable party is set forth in Fed.Bank.R. 719. The language of Rule 719 is virtually identical to Fed.R.Civ.P. 19. In discussing this issue, the parties and the district court relied on cases interpreting Rule 19. We will do the same. We review determinations regarding the indispensability of a party for abuse of discretion. Walsh v. Centeio, 692 F.2d 1239, 1241 (9th Cir.1982); accord Bakia v. County of Los Angeles, 687 F.2d 299, 301 (9th Cir.1982).
 
 
 50
 Under Fed.Bank.R. 719 and Fed.R.Civ.P. 19, the determination of whether a party is indispensable to an action is a two tiered process.[1] Provident Bank v. Patterson, 390 U.S. 102, 108-09, 88 S.Ct. 733, 737-38, 19 L.Ed.2d 936 (1968). First, the trial court must determine if the person must be joined if feasible. Fed.Bank.R. 719(a) and Fed.R.Civ.P. 19(a). A person shall be joined if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest." Fed.Bank.R. 719(a) and Fed.R.Civ.P. 19(a). As holders of title to the property in dispute, both absent spouses qualify as parties who should be joined if feasible.
 
 
 51
 If the person must be joined if feasible pursuant to 719(a) or 19(a) the court must then determine if such person is indispensable to the action. In making that determination, the court must balance the four factors set forth in 719(c) or 19(b). The court must decide whether pursuant to Fed.Bank.R. 719(c) and Fed.R.Civ.P. 19(b), such person is indispensable, and if so, the action must be dismissed in his or her absence. We believe the third factor set forth in the rules is controlling under these facts. If the court determines that "a judgment rendered in the person's absence will be adequate" id. to protect his interests, the person is not indispensable. Joinder is not required where the absent parties' interests are adequately protected by those who are present. Eldredge v. Carpenters, 662 F.2d 534 (9th Cir.1981), cert. denied, 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982); accord Mihara v. Dean Witter & Co., 619 F.2d 814 (9th Cir.1980); Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1191 (3d Cir.1979). The record demonstrates that the interests of the absent spouses were adequately protected by the Allustiartes who were present at trial. The absent spouses were not prejudiced by the failure to join them as parties since their interests were identical to their spouses who were named in the action.[2]
 
 III. CONCLUSION
 
 52
 We conclude that the bankruptcy court's findings that the debtors entered into fraudulent transactions regarding the Muzzy Ranch and the Storm and Shipp properties to conceal assets from their creditors are not clearly erroneous because they are supported by the evidence. The record also fully supports the bankruptcy court's determination that the promissory notes were executed without valid consideration to establish a fraudulent claim against the debtors' estate. The bankruptcy court's finding that the duty to pay the debtors the unpaid rent under the lease agreements was not modified by an oral agreement was not clearly erroneous in light of the court's credibility determinations. Because their interests were fully protected by the Allustiartes present at trial, the absent spouses were not indispensable parties.
 
 
 53
 The judgment of the district court is AFFIRMED in part and REVERSED in part. The order upholding the bankruptcy court's determinations concerning the Muzzy Ranch, the Storm property, the invalidity of the promissory notes, and the requirement that the Allustiartes pay the unpaid rents under the lease agreements is affirmed. The order of the district court vacating the imposition of a constructive trust regarding the Shipp property is reversed. The parties shall bear their own costs on appeal.
 
 
 
 [1]
 Fed.Bank.R. 719 provides in pertinent part as follows:
 Rule 719. Joinder of Persons Need for Just Determination.
 (a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the proceeding if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the proceeding and is so situated that the disposition of the proceeding in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.
 (c) Determination by Court Whenever Joinder or Proceeding with Joined Person Not Feasible. If a person as described in subdivision (a) hereof cannot be made a party, or if such a person is dismissed or the part of the proceeding involving his interest is transferred pursuant to subdivision (b) hereof, the court shall determine whether in equity and good conscience the proceeding should continue among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the proceeding is dismissed for nonjoinder.
 Fed.R.Civ.P. provides as follows:
 Rule 19. Joinder of Persons Needed for Just Adjudication.
 (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
 (b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 (c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, or any persons as described in subdivision (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined.
 (d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.
 
 
 [2]
 In addition, the absent parties' failure to intervene when they were not joined, may be considered in determining whether those parties have been prejudiced by non-joinder. Northrop Corp. v. McDonnell-Douglas Corp., 705 F.2d 1030 (9th Cir.), cert. denied, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); United States v. Sabine Shell, Inc., 674 F.2d 480, 483 (5th Cir.1982). The spouses did not intervene at any point, even though they were entitled to do so under Fed.R.Civ.P. 24(b)(2)