**Moe NASR, as Trustee of the George Business Trust, Plaintiff—Counter–Defendant—Appellee,**

v.

**Teresita S. DE LEON; Carlsberg Properties, Ltd., a California Corp.; Carlsberg Resources Corp., a California Corp.; CMC Securities, Inc., a California Corp.; D&R Energy, Inc., a California Corp., a California Corp.; Del Rey Sunrise, Inc., a California Corp.; Five Seasons Investment, Ltd., a California Limited Partnership; Geary Realty Corp., a California Corp.; Halls Properties, Inc., a Tennessee Corp.; LJB Enterprises, a California Partnership; Northlake Mobile Home**

Properties, a Colorado Business Entity; Carlsberg Mobile Home Properties, Ltd., a California Corp.; RG Daytona, Inc., a Florida Corp.; Silver Star Associates, a California General Partnership; Sunrise Golf Development Corp., a Florida Corp.; Sunrise Mobile Home Communities, a Florida Business Entity Form Unknown; Sunset Strip Corp., a Florida Corp.; TCP, Inc., a California Corp.; TTP, Inc., a California Corp.; US Rentals Self–Storage, a Florida Limited Partnership; Walcott Mobile Home Properties, a California Partnership; Sunrise Mobile Homes, Inc., a Florida Corp., Defendants—Appellees,

and

William Geary, an individual; Kathleen Krzeminski, an individual; Estate of Elmer B. Simbol; Carlsberg Managed Properties Fund, Ltd., a California Limited Partnership; Carlsberg Management Co., a California Corp., Defendants—Counter–Claimants—Appellees,

and

Hickory Star Properties, a California General Partnership; Gallup Investors, a California General Partnership; Gallup Properties, a California General Partnership; Butcher Building Properties, a California General Partnership; Key Square Properties, a California General Partnership; Commerce Center Properties, a California General Partnership; Sunset Center Property, a California General Partnership; Northlake Mobile Home Park Properties, a California General Partnership; Sunset Strip Properties, a California General Partnership; George Family Trust; Santa Barbara Mobile Home Properties, a California General Partnership; Lakeside Manor East Properties, a California General Partnership; Lakeside Manor South Properties, a California General Partnership; Sunrise Terrace Properties, a California General Partnership; Ball Park Plaza Properties, a California General Partnership; the Library Square Properties, a California General Partnership; the Virginian Properties, a California General Partnership; the Property 1660, a California General Partnership; the Property 1670, a California General Partnership; the Cinema Properties, a California General Partnership; Wayne Reeder, aka George Wayne Reeder, Individually and as Settlor of the George Business Trust, and as General Partner of Key Square Properties, Commerce Center Properties, Sunset Center Properties, Lakeside Manor East Property, Lakeside Manor South Properties, Sunrise Terrace Properties, Ball Park Plaza Property, the Library Square Properties, the Virginian Property, the 1670 Property, and the 1660 Property, Counter–Defendants—Appellees,

v.

Ben B. Floyd, intervening Party Chapter 7 Trustee of RHI Holdings Inc. and Hill Top Developers, Inc., Plaintiff—Intervenor—Appellant.

No. 99–56710.

D.C. No. CV–94–08288–DT.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2001.

Decided Sept. 4, 2001.

Before HUG and B. FLETCHER, Circuit Judges, and KING,[1] District Judge.

## MEMORANDUM [2]

The Trustee of the bankruptcy estates of Hill Top Developers, Inc., and RHI Holdings, Inc. (collectively, the "Debtor Corporations"), intervened in a suit filed against William W. Geary ("Geary"), the Debtor Corporations' former officer/director, and his affiliates (the "Geary Defendants"). The suit was filed by Moe Nasr ("Nasr"), the trustee of a trust created by George Wayne Reeder ("Reeder"), the sole shareholder of the Debtor Corporations. In the original complaint, Nasr sought recovery of 42 properties owned by the Debtor Corporations (the "Properties") that were allegedly transferred fraudulently to the Geary Defendants. In his Complaint–in–Intervention, the Trustee asserted against the Geary Defendants (1) state law claims of, *inter alia*, breach of fiduciary duty and usurpation of corporate opportunity, and (2) avoidance claims under §§ 544 and 548 of the Bankruptcy Code. On various motions for summary judgment, the district court held that all of the Trustee's claims were time-barred and

1.  Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

2.  This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

granted summary judgment to the defendants-appellees. We vacate and remand as to the state law claims and reverse as to the avoidance claims. We do not repeat the facts in this complex case except as necessary to explain our disposition.

■ With regard to the state law claims, we agree with the district court that the three-year statute of limitations for fraud actions set forth in California Code of Civil Procedure ("CCP") §§ 338(d) governs, as the gravamen of the state law claims is fraud. We further agree with the district court that the Trustee's Complaint–in–Intervention did not relate back to the filing date of the original complaint because there is no identity of interests between Nasr and the Trustee, as their interests are adverse. *See Rosenbaum v. Syntex Corp. (In re Syntex Corp. Sec. Litig.),* 95 F.3d 922, 935 (9th Cir.1996). We disagree, however, with the district court's determination of when the state law claims accrued. The district court determined that the limitations period commenced no later than June 3, 1993, the date that Geary resigned his positions with the Debtor Corporations. Using this date to calculate the limitations period, the Trustee had until June 6, 1996, to file the state law claims. The district court accordingly held that the state law claims, which were filed on November 25, 1996, were time-barred. The Trustee contends that the district court ignored the "discovery rule exception" to the general accrual rule.

■ Under California law, accrual of a cause of action is postponed "until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 88 (Cal.1999). A plaintiff discovers the cause of action when "he at least 'suspects . . . that someone has done something wrong' to him, 'wrong' being used . . . in accordance with its 'lay understanding.' " *Id.* (citations omitted and first set of ellipses in original). The Trustee maintains that Geary controlled the Debtor Corporations and purposely structured the transfers of the Properties such that the fraudulent nature of the transfers was indiscoverable "until the trustee in bankruptcy took over the accounts and records of the debtors." *Cooper v. Allustiarte (In re Allustiarte),* 786 F.2d 910, 915 (9th Cir. 1986).[3] *Cooper* is unhelpful because it involved a trustee who asserted a claim for the benefit of the debtors' creditors, whereas here, the Trustee brings the state law claims on behalf of the Debtor Corporations. 11 U.S.C. §§ 323(a) (stating that the trustee is the representative of the bankruptcy estate), 541(a)(1) (stating that legal claims of the debtor are property of the bankruptcy estate). The Trustee steps into the shoes of the Debtor Corporations in bringing the claims. *See Mediators, Inc. v. Manney (In re Mediators),* 105 F.3d 822, 825–26 (2d Cir.1997). Thus, it matters not only when the Trustee discovered the claims, but also when the Debtor Corporations discovered them. And since Reeder was in sole control of the Debtor Corporations until the conversion of the

---

3. The Trustee argues in the alternative that the fraud was concealed at least until July 1995, when the Debtor Corporations filed an application to retain special counsel. The application mentions the possibility that the Debtor Corporations might have claims against the Geary Defendants. As a matter of law, July 1995 cannot mark the time of discovery for two reasons. First, by 1994, Nasr had filed the original complaint in this case, in which he asserted the same state law claims as those the Trustee asserts in the Complaint–in–Intervention. Second, as explained below, Reeder's filing of "negative pledge agreements" in November 1993 strongly indicates that discovery occurred before July 1995.

bankruptcy cases, his knowledge of the fraud is imputable to the Debtor Corporations[4] and, in turn, to the Trustee.

The district court erred in ruling as a matter of law that the state law claims accrued upon Geary's resignation from the Debtor Corporations on June 3, 1993. Given that Geary intentionally structured the transfers of the Properties so as to elude discovery, his fraud did not automatically become discoverable immediately after he resigned. It is reasonable to infer that time and effort was required to discover the fraudulent scheme after Geary relinquished control of the Debtor Corporations. How much time elapsed before discovery is a question of fact.

The record discloses that by November 1993, Reeder had filed fifteen "negative pledge agreements" against some of the transferred properties apparently in an attempt to slander the title of the Geary Defendants. The filings are a significant clue as to when discovery took place, but essential information about them is lacking. The contents of the negative pledge agreements are not in the record, which prevents a definitive finding that the filings evidence discovery. Furthermore, the record does not indicate when Reeder filed the negative pledge agreements. At least fifteen negative pledge agreements had been filed by November 1993, but it is unclear whether they were filed on or after November 25, 1993. If the negative pledge agreements were filed on or after November 25, 1993, then the filing of the Complaint–in–Intervention on November 25, 1996, timely asserted the state law claims. Otherwise, the state law claims were untimely. Questions of fact thus precluded summary judgment. Accordingly, we vacate the district court's grant of summary judgment on the state law claims and remand for further proceedings as to the issue of accrual.

■ We also reverse the district court's grant of summary judgment on the avoidance claims. Our holding in *Mosier v. Kroger Co. (In re IRFM, Inc.)*, 65 F.3d 778 (9th cir.1995), controls when the statute of limitations on the Trustee's avoidance claims commences. That is, where a debtor-in-possession in a Chapter 11 bankruptcy case is replaced by a trustee after conversion into a Chapter 7 proceeding—as was the case here—the limitations period for avoidance claims commences on the date the Chapter 11 petition was filed. *Id.* at 781. Contrary to the Trustee's argument, *IRFM* remains good law.

Our disagreement with the district court as to the avoidance claims is in regard to the doctrine of equitable tolling. The dis-

4. We note that an issue on appeal is whether the adverse domination doctrine precludes imputation of Reeder's knowledge about the claims to the Debtor Corporations. The adverse domination doctrine tolls a statute of limitations when a claim belonging to an organization arises from a director's or employee's wrongdoing, and the wrongdoer's domination over the organization makes discovery impossible. *Smith v. Superior Court,* 217 Cal. App.3d 950, 266 Cal.Rptr. 253, 255 (Cal.Ct. App.1990). If the doctrine applies, the dominating agent's knowledge of the wrongdoing is not imputed to the corporation. The Trustee claims that Reeder adversely dominated the Debtor Corporations during the period between Geary's resignation and the conversion of the bankruptcy cases. We hold that the doctrine is wholly inapplicable in this case because it applies only when a suit is brought against a self-dealing agent of an organization. Here, the alleged dominating agent and the alleged wrongdoer are not the same. The state law claims are asserted against the Geary Defendants, not Reeder. It is thus irrelevant whether Reeder adversely dominated the Debtor Corporations because he is not the one to whom the Trustee attributes the wrongdoing. Accordingly, Reeder's knowledge of the claims is imputable to the Debtor Corporations.

trict court held as a matter of law that the limitations period was not equitable tolled while the Trustee investigated whether he could bring avoidance claims against the Geary Defendants shortly after his appointment. The limitations period in § 546(a)(1), the statute of limitations governing the avoidance claims, is subject to equitable tolling. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc. v. Ernst & Young)*, 14 F.3d 1380, 1384 (9th Cir.1994). The equitable tolling doctrine holds that the limitations period does not run while a party is ignorant of a wrong without any fault or lack of diligence on his or her part. *Id.* A district court may grant summary judgment "if the uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraud but failed to file a timely complaint." *Id.* at 1385 (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir.1987)).

The district court found the Trustee lacking in diligence given that by July 1995, the Debtor Corporations had filed in the bankruptcy court an application to employ counsel in which they refer to the Geary Defendants' wrongful control over the Properties. The Trustee filed his initial Complaint–in–Intervention over a year later, and the First Amended Complaint–in–Intervention (which asserted the avoidance claims for the first time) about an additional half-year after that.

Because the parties do not the dispute the facts and the record is sufficiently developed, we hold as a matter of law that the Trustee acted diligently and that the doctrine of equitable tolling applies. *Cf. Ernst & Young*, 14 F.3d at 1385 ("[W]hen application of equitable tolling turns on the plaintiff's diligence in discovering a cause of action, courts may hold, as a matter of law, that the doctrine does not apply."). A bankruptcy trustee must investigate the affairs of the debtor to ascertain whether any claims could be brought on behalf of the parties in interest. *See* 11 U.S.C. §§ 704(1), (4); *Ernst & Young*, 14 F.3d at 1386. Here, the Trustee investigated into the transfer of the Properties soon after his appointment. He reviewed a copy of Nasr's complaint and the filings in the bankruptcy court. He met with Reeder and the Debtor Corporations' former bankruptcy counsel. The Trustee had a little over four months after his appointment to discover and file the avoidance claims. Within this four-month period, the Trustee was burdened with a number of responsibilities in addition to pursuing claims against the Geary Defendants, including overseeing the pending bankruptcy case and an unrelated multi-district litigation in the District of Arizona. Adding to the burden was the fact that only $45,000 in funds remained in the estate at the time. Given the complexity of the case, the size of the record, the likelihood that Geary structured the transfers of the Properties to avoid discovery of his alleged fraud, and the limited resources available to the Trustee, the Trustee acted diligently in insisting on a thorough investigation before using the estate's limited funds to pursue the avoidance claims. We therefore reverse the district court's grant of summary judgment on the avoidance claims.

VACATED AND REMANDED IN PART; REVERSED IN PART.